1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARGARITA ERGUERA, an individual on behalf of herself and others similarly situated, <br><br>        Plaintiff, <br><br>    v. <br><br> CMG CIT ACQUISITION, LLC, et al., <br><br>        Defendants. | Case No.: 1:20-cv-01744-JLT-CDB <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT <br><br> (Doc. 34) |

     Margarita Erguera asserts CMG CIT Acquisition, LLC and Circharo Acquisition LLC violated California wage and hour laws by (1) failing to include all remuneration in the regular rate of pay when calculating overtime wages, and (2) failing to timely pay all wages owing at termination of employment. Plaintiff now seeks preliminary approval of a settlement reached in this action. Specifically, Plaintiff seeks: (1) conditional certification of the proposed settlement class; (2) preliminary approval of the settlement terms; (3) approval of the class notice materials; (4) appointment of Plaintiff as the class representative; (5) appointment of the firm Hayes Pawlenko LLP as class counsel; (6) appointment of Phoenix Class Action Administration Solutions as the settlement administrator; and (7) scheduling for final approval. (Doc. 34.)

     The Court reviewed the proposed settlement between the parties, as well as the moving papers, and finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and

1  General Order 618. For the reasons set forth below, Plaintiff's motion for preliminary approval of the

2  class settlement is **GRANTED**.

3  ## BACKGROUND

4  Defendants "operate a healthcare staffing company that employs hourly health care

5  professionals for short-term travel assignments at health care providers throughout California and

6  elsewhere." (Doc. 1 at 3-4, ¶ 11.) For each work assignment, Defendants execute an assignment

7  contract specifying the employee's compensation and expected work hours. (*Id*. at 4, ¶ 12.) Employees

8  receive both an hourly wage and a weekly per diem allowance, the latter of which varies depending

9  upon the extent to which the employee satisfies her contracted hours for that week. (*Id*., ¶¶ 13-14.) An

10 employees' weekly per diem allowance is prorated on a sliding scale to the extent the employee fails

11 to satisfy her weekly contracted hours. (*Id*., ¶ 16.)

12 Plaintiff asserts that as employees of Defendants, she and others performed assignments for

13 more than eight hours per week. (Doc. 1 at 4, ¶¶ 20, 23.) When this would occur, Plaintiff alleges that

14 Defendants "did not include the value of the weekly per diem allowance in [their] regular rate of pay

15 for purposes of calculating [their] overtime and double time wages." (*Id*. at 5, ¶ 21.)

16 On December 8, 2020, Plaintiff filed the instant class complaint. (Doc. 1.) Plaintiff identifies

17 the following causes of action: (1) failure to pay overtime wages pursuant to Cal. Labor Code §§ 510,

18 1194; (2) unlawful and unfair conduct in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; (3)

19 waiting time penalties pursuant to Cal. Labor Code §§ 201, 203; and (4) violation of the Fair Labor

20 Standards Act, 29 U.S.C. § 201, *et seq.*[1] (*Id*. at 7-10, ¶¶ 32-52.) Plaintiff asserts the claims are brought

21 on behalf of herself and the California class composed of "[a]ll non-exempt hourly health care

22 professionals employed by DEFENDANTS in California who, at any time since four years before the

23 filing of this action, worked overtime and received a per diem allowance." (*Id*. at 5, ¶ 23.) Defendants

24 filed their answer on February 8, 2021. (Doc. 8.)

25 On October 4, 2022, Plaintiff filed a motion for preliminary approval of the settlement with

26

27

28 [1] In Plaintiff's instant motion for preliminary approval, she seeks to dismiss her FLSA claim without prejudice.
(Doc. 34-4 at 4, ¶ 3, Doc. 34-1 at 11.) Accordingly, this request is **GRANTED** and Plaintiff's FLSA claim is
**DISMISSED** without prejudice.

1    Defendants in this action. (Doc. 34.) Defendants did not oppose or otherwise respond to the motion.

2                                **THE PROPOSED SETTLEMENT**

3          Pursuant to the proposed "Joint Stipulation and Settlement Agreement ("Settlement" or

4    "Settlement Agreement"), the parties agree to a gross settlement amount ("Gross Settlement Fund") of

5    $900,000.00 for a class including:

6          All non-exempt hourly healthcare professionals employed by Defendant in California
           who, at any time from December 8, 2016 through September 30, 2022, worked
7          overtime and received a per diem allowance.

8    (Doc. 34-4 at 4, ¶ 2; *id*. at 6, ¶ 6, ("Settlement Class").) In the event the number of class members

9    exceeds 800, the Gross Settlement Fund "shall be increased pro-rata for each additional class member."

10   (*Id*. at 6, ¶ 6.) The settlement funds are non-reversionary and Defendants shall also pay "[e]mployer-

11   side payroll taxes" separately from the Gross Settlement Fund. (*Id*.)

12   **I.     Payment Terms**

13         The parties agree the Gross Settlement Fund shall cover payments to class members, including

14   (1) a service award to Plaintiff as the Class Representative, not to exceed $5,000; (2) payment to Class

15   Counsel for attorneys' fees and costs, not to exceed $10,000.00; and (3) administration fees to the

16   Settlement Administrator, not to exceed $15,000.00. (Doc. 34-4 at 6-7, ¶ 7; *id*. at 19; *see also* Doc. 34-1

17   at 11-12.) After these payments, the remaining balance of the Gross Settlement Fund ("Net Settlement

18   Fund") would be distributed to class members who did not opt-out. (*Id*.)

19         Settlement shares will be calculated on a *pro rata* basis to class members "based on the number

20   of overtime hours [Defendants'] pay records credit each member with having worked during the class

21   period (hereafter 'Qualifying Overtime Hours')." (Doc. 34-4 at 7, ¶ 8.) Specifically, the Settlement

22   provides:

23         The Net Settlement Fund shall first be divided by the total number of Qualifying
           Overtime Hours worked by the entire California Rule 23 Class to determine the
24         monetary value of each Qualifying Overtime Hour. Each individual payment to a
           member of the class will then be calculated by multiplying that individual's number
25         of Qualifying Overtime Hours by the monetary value of each Qualifying Overtime
           Hour. Mathematically, an individual's settlement payment will be calculated as
26         follows: (Net Settlement Fund ÷ Qualifying Overtime Hours of entire class) x
           (Qualifying Overtime Hours worked by the individual) = individual settlement
27         payment.

28   (*Id*.)

                                                    3

The appointed Settlement Administrator will distribute payment by mailing checks to all class members. (Doc. 34-4 at 11-12, ¶ 12.) Checks must be cashed within 180 days of the mailing. (*Id.*) If any check remains uncashed after the 180-day period, the money does not revert to Defendants. Rather, "the amount shall be deposited with the State of California Controller's Office of Unclaimed Funds in the name of the individual to whom the settlement check had been addressed." (*Id.*)

## II.    Releases

The Settlement provides that Plaintiff and class members, other than those who elect not to participate in the Settlement, shall release Defendants from claims. (Doc. 34-4 at 5-6, ¶ 5.) Specifically, the release for all class members provides:

> **a.    Class Release:** As of the Effective Date, all members of the California Rule 23 Class who do not timely request exclusion from the Settlement, shall release CMG CIT Acquisition, LLC, its predecessor Circharo Acquisitions LLC, along with any parent, subsidiary, affiliate, predecessor or successor, agents, employees, officers, and directors ("Releasees") throughout the class period from any and all debts, liabilities, costs, demands, obligations, claims, causes of action, or complaints arising during the class period that were pled on behalf of the California Rule 23 Class in the operative Complaint, or which could have been pled on behalf of the California Rule 23 Class based on the same facts as pled in the operative Complaint. This includes claims, to the extent based on the same facts as pled in the operative Complaint, relating to the alleged failure of the Defendant to provide any of the California Rule 23 Class Members with compensation as required by law relating to wages, claims for overtime hours worked, itemized wage statement/pay stub violations, civil penalties, PAGA penalties, or waiting-time penalties as required by law or regulations, the failure to pay penalties, alleged violations of California Labor Code as well as the relevant Industrial Welfare Commission Wage Order(s), Title 8 of the California Code of Regulations, California Business and Professions Code Sections 17200, et seq., as well as claims for interest, costs, attorneys' fees, compensatory damages, and all claims for restitution and other equitable relief, injunctive relief, liquidated damages, and any other remedies owed or available under the law based on the facts set forth in the operative Complaint.

(*Id.* at 5, ¶ 5.)

The release for Plaintiff encompasses more claims than those identified for class members, because she agreed to release any claims known and unknown against Defendants, not just those claims constrained to the facts alleged in this action. Specifically, Plaintiff's release provides:

> As of the Effective Date, Plaintiff, in her individual capacity only, shall irrevocably and unconditionally release, acquit, and discharge the Releasees from any and all complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever, known or unknown, to the fullest extent permitted by law, including a waiver of California Civil Code §1542. With respect to this general release, Plaintiff stipulates and agrees that she shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the

4

provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under state or federal law as to the generally released claims. Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(Doc. 34-4 at 5-6, ¶ 5.) Thus, claims released by Plaintiff—but not the Settlement Class—include any claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Employee Retirement Income Security Act.

## III.    Objections and Opt-Out Procedure

The parties agree the class members would not be required to take any action to receive their settlement shares. (Doc. 34-4 at 7, ¶ 8.) However, any class member who wishes may file objections, elect not to participate in the Settlement, or dispute the number of Qualifying Overtime Hours allocated to him or her. (*Id.* at 9-11, ¶ 11.) The proposed notice for class members explains the procedures to object to the terms, request exclusion from the Settlement, and dispute overtime calculations. (*Id.* at 19-21.)

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

## I.    Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf

of all." Fed. R. Civ. P. 23(a). Plaintiff seeks to "conditionally certify the proposed class for settlement purposes" pursuant to Fed. R. Civ. P. 23. (*See* Doc. 34-1 at 8, 14; Doc. 34-4 at 4, ¶ 2.) Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate … compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives identified in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A.    Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

#### 1.    Numerosity

This prerequisite requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a specific threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (finding the numerosity requirement … "satisfied solely on the basis of the number of ascertained class members"); *see also Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th Cir. 1977) (a proposed class with 110 members "clearly [included] a sufficient number to meet the numerosity requirements").

Plaintiff asserts that "the proposed class contains approximately 800 individuals." (Doc. 34-1 at 14.) Therefore, joinder of all identified class members as plaintiffs is impracticable, and the

numerosity requirement is satisfied.

### 2.   Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the plaintiff must demonstrate common points of facts and law. *See Wal-Mart Stores*, 564 U.S. at 350. Thus, "commonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks, citations omitted).

Plaintiff asserts the commonality requirement is satisfied because "the class claims hinge on a single common contention that is capable of classwide resolution." (Doc. 34-1 at 15.) According to Plaintiff, "each claim is based on a challenge to [Defendants'] common policy of excluding per diem payments from the regular rate of pay when calculating overtime." (*Id.*) Because it appears resolution of the issue—whether the per diem payments were unlawfully excluded from regular pay—would apply to the claims of each of the class members, the Court finds the commonality requirement is satisfied.

### 3.   Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks, citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when named plaintiffs have the same claims as other members of the class and would not be subject to unique defenses).

Plaintiff asserts the typicality requirement is satisfied because "[she] and all other members of

the settlement class alike, received per diem payments which were excluded from their regular rates of pay." (Doc. 34-1 at 15.) Because Plaintiff was subjected to the same exclusions as the class members, the Court finds the typicality requirement is satisfied for purposes of settlement. *See Hanon*, 976 F.2d at 508; *Kayes*, 51 F.3d at 1463.

4.    Adequacy of Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

a.    *Proposed class representative*

Plaintiff seeks appointment as the Class Representative. (*See* Doc. 34-1 at 16; Doc. 34-6 at 2; Doc. 1 at 10.) Plaintiff asserts "there are no known conflicts between [her] or her counsel and the settlement class." (Doc. 34-1 at 16.) According to Plaintiff, she "understands her obligations as a class representative and has been actively involved throughout litigation." (*Id.*) Neither party identifies conflicts between Plaintiff and the class members. (*See id.*) Thus, the Court finds Plaintiff will fairly and adequately represent the interests of the Settlement Class.

b.    *Proposed class counsel*

The law firm of Hayes Pawlenko LLP seeks appointment as Class Counsel for the Settlement Class. (Doc. 34-1 at 16; Doc. 1 at 10; *see also* Doc. 34-4 at 6.) According to Plaintiff, "class counsel is experienced in wage and hour class actions, has been appointed class counsel in numerous other wage and hour cases, and has vigorously represented the interests of the settlement class." (Doc 34-1 at 16, citing Doc. 34-3, Hayes Decl. ¶¶ 2-5, 11-23.) Counsel report they are experienced in handling employment, wage and hour, and class action lawsuits, including those following contested motions for class certification. (Hayes Decl. ¶¶ 2-5.) Mr. Hayes reports he has worked in employment litigation for "the past 20 years." (*Id.* at ¶ 3) His partner, Kye D. Pawlenko, has focused his practice on labor and

1  employment law since 2002. (*Id*. at ¶ 4.) Thus, their experience and reputation support a conclusion

2  that counsel prosecuted the action vigorously on behalf of the putative class when the action was filed

3  and the now-proposed Settlement Class. Further, Defendants make no objection to the appointment for

4  purposes of the pending settlement. Therefore, the Court finds Hayes Pawlenko LLP satisfies the

5  adequacy requirement.

6       **B.**      **Certification of a Class under Rule 23(b)(3)**

7       As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified

8  if it is maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266.

9  Plaintiff asserts certification of the Settlement Class is appropriate under Rule 23(b)(3), which requires

10  a finding that (1) "questions common to the class predominate" over any questions affecting only

11  individual members, and (2) "a class action is superior because determining the legality of Defendants'

12  policies "will reduce litigation costs and promote greater efficiency." (Doc. 34-1 at 17, quotation marks

13  omitted.)

14       Plaintiff argues the predominance requirement is satisfied because "each class claim hinges

15  upon the common question of whether [Defendants'] uniform policy and practice of excluding per

16  diem payments from the regular rate of pay is unlawful." (Doc 34-1 at 16.) Plaintiff also contends

17  certification of the Settlement Class is a superior method of adjudicating the issues because it will

18  promote efficiency and reduce costs. Plaintiff relies on three cases within the Ninth Circuit holding

19  that for cases challenging the legality of a policy excluding certain payments, class actions are the

20  superior method of adjudication. (*See id*., citing *Leyva v. Medline Indus.,* 716 F.3d 510, 512-16 (9th

21  Cir. 2013); *Dalchau v. Fastaff, LLC,* 2018 U.S. WL 1709925, *11 (N.D. Cal. Apr. 9, 2018); *Howell v.

22  Advantage RN, LLC,* 2018 WL 3437123, *1, *9 (S.D. Cal. Jul. 17, 2018).) Therefore, the Court finds

23  conditional certification of the proposed Settlement Class is proper under Rule 23(b)(3).

24  **II.**      **Evaluation of the Settlement Terms**

25       Settlement of a class action requires approval of the Court, which may be granted "only after a

26  hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

27  Approval is required to ensure settlement is consistent with the plaintiff's fiduciary obligations to the

28  class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). Toward that end,

"Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021); *see* Fed. R. Civ. P. 23(e)(2) (effective Dec. 1, 2018). Rule 23(e)(2) now directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023-24. The Ninth Circuit determined this revision to Rule 23 requires courts "to go beyond [its] precedent." *Briseño*, 998 F.3d at 1026.[2]

## A.      Representation of the Class

To determine adequacy of representation under Rule 23(e)(2), the Court may consider whether the interests of the named plaintiff are "aligned with the interests of the Class Members." *See Cottle v. Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021). In addition, a finding that "Class Counsel are experienced and competent" supports a conclusion that the class is adequately represented. *Id.*; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Thus, the adequacy analysis under Rule 23(e)(2) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *Moreno v. Beacon Roofing Supply, Inc.*,

---

[2] Previously, the Ninth Circuit identified several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). However, the Court focuses its analysis on the factors enumerated in Rule 23. *See Briseño*, 998 F.3d at 1026; *see also Herrera v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 170195, at *21 (C.D. Cal. June 8, 2021) ("The goal of [amended Rule 23(e)] is … to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal") (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).

1    2020 WL 1139672 *at 5 (S.D. Cal. Mar. 9, 2020).

2          Plaintiff contends she has "no interests which are inconsistent with or in conflict with the

3    interests of other members of the proposed class with regard to this litigation and

4    have endeavored to adequately represent the members of the proposed class in this litigation." (Doc.

5    34-5 at 3, Plaintiff Decl. ¶ 11.) In addition, Class Counsel are clearly experienced in class action

6    litigation. (*See* Doc. 24-1 at 16; Doc. 34-3.) Because Plaintiff carried the burden to show the adequacy

7    prerequisite was satisfied under Rule 23(a), the Court finds the requirement under Rule 23(e)(2) is also

8    satisfied. *See Moreno*, 2020 WL 1139672 *at 5 ("Because the Court found that adequacy under Rule

9    23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is

10   also met.").

11          **B.      Negotiation of the Settlement**

12          Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's length."

13   Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit also "put[s] a good deal of stock in the product of an

14   arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement.

15   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). The inquiry of collusion addresses

16   the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators"

17   or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. The Ninth

18   Circuit observed that "settlement class actions present unique due process concerns for absent class

19   members" because the "inherent risk is that class counsel may collude with the defendants, tacitly

20   reducing the overall settlement in return for a higher attorney's fee." *See In re Bluetooth Headset

21   Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks, citations omitted).

22   Therefore, the Court must consider whether the process by which the parties arrived at their settlement

23   is truly the product of arm's length bargaining—as Plaintiff asserts (Doc. 34-1 at 18)— or the product

24   of collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

25          When a class action settlement agreement is reached before a class is certified, district courts

26   must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have

27   allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."

28   *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 94; *see also Briseño*, 998 F.3d at 1023. These

"more subtle signs" include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds" and "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal quotations, citations omitted).

### 1. Whether there is a disproportionate distribution to counsel

The Settlement provides that Class Counsel may request attorneys' fees up to $225,000.00, which is 25% of the Gross Settlement Fund. (Doc. 34-4 at 19; Doc. 34-1 at 12; Hayes Decl. ¶ 31.)[3] The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Because the fees requested are within the range awarded by the Ninth Circuit from the Gross Settlement Fund, the Court finds the Settlement Agreement does not provide a disproportionate distribution to Class Counsel. *See Millan v. Casvade Water Servs.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015) (finding no disproportionate distribution where class counsel was to receive a third of the settlement fund "although significantly above the benchmark for this Circuit," because it was "not unreasonable as an upper bound" of fees awarded in the Circuit).

### 2. Existence of a "clear sailing" agreement

A "clear sailing" provision is one in which the parties agree to the "payment of attorneys' fees separate and apart from class funds." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947. The Ninth Circuit recognized a "clear sailing" arrangement also exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Lane*, 696 F.3d at 832; *In re Bluetooth Headset Prods.*, 654 F.3d at 947.

The Settlement Agreement indicates that the attorneys' fees and litigation costs are to be

---

[3] The Court notes that though the proposed notice miscalculates 25% of $900,000.00 to be $222,500.00 (Doc. 34-4 at 19) as opposed to the correct amount of $225,000.00 (Hayes Decl. ¶ 31), Plaintiff and counsel have been consistent as to not seeking more than 25% of the Gross Settlement Fund.

"determined solely by the Court" and that amount will be deducted from the Gross Settlement Fund as opposed to being paid separately. (Doc. 34-4 at 6, ¶ 7.) Plaintiffs contend "there is *no* 'clear sailing' agreement as to the amount of fees and costs to be awarded" because the amount "shall be determined *exclusively* by the Court." (Doc. 34-1 at 12, emphasis in original.) The Court agrees that there is no evidence of a "clear sailing" agreement. Consequently, this factor weighs in favor of preliminary approval of the Settlement.

### 3.    Whether there is a reversion to Defendants

The parties did not arrange for any unawarded fees to revert to Defendants. Instead, the parties acknowledge in the Settlement Agreement that the gross settlement amount is "non-reversionary," and fees shall be paid from the Gross Settlement Fund. (Doc. 34-4 at 6, ¶ 6.) Because any unawarded fees return to the Gross Settlement Fund for distribution to the Settlement Class, this factor does not support a finding of collusion between the parties.

### 4.    Findings on collusion

Based upon the factors set forth by the Ninth Circuit, the Court finds the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007). Thus, this factor under Rule 23 supports preliminary approval of the Settlement.

### C.    Relief Provided to the Class

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). When analyzing an agreement, the Court should examine "the complete package taken as a whole," and the proposed settlement is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625, 628.

The proposed settlement amount is $900,000.00. (Doc. 34-4 at 6, ¶ 6.) After the anticipated deductions from the Gross Settlement Fund, Plaintiff estimates that the average individual settlement payment to be approximately $806.25 per class member. (Hayes Decl. ¶ 32; *see also* Doc. 34-1 at 8 ("The average payment per class member is projected to exceed $800.").) According to Plaintiff,

$900,000.00 constitutes "approximately 75% of the alleged unpaid overtime and approximately 30% [of] the maximum amount that could be recovered on all claims following a successful trial." (Doc. 34-1 at 19, 22.) Analyzing the factors identified in Rule 23, as discussed below, the Court finds the amount offered and relief provided to the Settlement Class supports preliminary approval of the Settlement.

### 1. Costs, risks, and delays

"A[] central concern [when evaluating a proposed class action settlement] … relate[s] to the cost and risk involved in pursuing a litigated outcome." *Feltz v. Cox Comm's Cal., LLC*, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) (quoting Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes [modifications in original].) Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the settlement were to be rejected, the parties would have to engage in further litigation, including seeking class certification and discovery on the issue of damages.

Plaintiff reports the following:

> [P]rior to reaching the Settlement, Plaintiff's counsel obtained and analyzed: (1) all of [Defendants'] policies, procedures, and practices regarding paying [class members]; (2) all of [Defendants'] policies, procedures, and practices regarding the provision of per diem payments to [class members]; (3) all of [Defendants'] policies procedures, and practices regarding adjusting, prorating and/or reducing per diem payments when employees fail to work minimum weekly required hours; (4) all versions of travel assignment agreements utilized during the class period; (5) all of [Defendants'] policies, procedures, and practices regarding calculating overtime rates for employees; and (6) payroll data regarding the average hourly wage rates and the average weekly meal and incidental and lodging per diem payments made to [class members] during the class period.

(Doc. 34-1 at 18, citing Hayes Decl. ¶ 13).

Plaintiff acknowledges there are risks "weighing against" her related to whether per diem payments may properly be excluded from the regular rate. (Doc. 34-1 at 22.) Specifically, Plaintiff asserts the claim related to waiting time penalties "faces additional risks rendering it doubtful that *any* waiting time penalties could actually be recovered in light of several defenses asserted by [Defendants]." (*Id.* at 22-23, emphasis in original; *see also* Hayes Decl. ¶¶ 40-42.) As the proposed notice provides, "Although it believes that it complied with the law, Defendant has concluded that further defense of this litigation would be protracted and expensive for all parties. Defendant has also considered the risks of further litigation in reaching its decision." (Doc. 34-4 at 18.) Furthermore,

Plaintiff asserts the risks involved "make recovery of the maximum amounts unlikely and justify this compromise for purposes of settlement." (Doc. 34-1 at 22.) Finally, the Settlement provides that all payments be distributed within 10 court days after receipt of the Gross Settlement Fund. (Doc. 34-4 at 11-12, ¶ 12.)

As Plaintiff observes, the risk and expense of continued litigation related to these claims could outweigh any additional recovery. On the other hand, the Settlement provides for immediate recovery on claims presented by Plaintiff on behalf of the class. Due to the acknowledged risk of the claims of class members, costs of future litigation that may reduce the recovery to class members, and delay in payments if the settlement is not approved, this factor weighs in favor of preliminary approval of the Settlement. *See Rodriguez*, 563 F.3d at 966 (risk, expense, complexity and duration of litigation supports settlement); *Curtis-Bauer v. Morgan Stanley & Co., Inc*., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### 2.    Proposed distribution

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method," 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.)). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*.

According to the Settlement, class members are not required to take any action, such as submitting a claim form, to receive their settlement payment. (Doc. 34-1 at 12; Doc. 34-4 at 7, ¶ 8.) Rather, class members need only take specific action if they wish to opt-out of the settlement, object to any of the terms of the settlement, or dispute overtime calculations. (Doc. 34-1 at 13; Doc. 34-4 at 9-11; ¶ 11.) Because the class members are not required to submit a claim form, the proposed method of distribution will facilitate payment for legitimate claims and is not "unduly demanding" upon the class

15

members. Thus, this factor weighs in favor of preliminary approval of the settlement. *See Jackson v. Fastenal Co.*, 2021 WL 5755583 at *11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class members did not have to file a claim).

### 3.    Attorneys' fees

Under Rule 23, "courts must scrutinize 'the terms of any proposed award of attorney's fees.'" *McKinney-Drobnis v. Oreshack*, 16 F.14th 594, 607 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit explained, "the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Id.*, quoting *Briseño*, 998 F.3d at 1024.

As discussed above, Class Counsel may request fees in the amount of 25% of the Gross Settlement Fund. (Doc. 34-1 at 12; Hayes Decl. ¶ 31; Doc. 34-4 at 19.) The Settlement provides that within 15 court days after final judicial approval of the Settlement ("Effective Date"), Defendants will "fund the Gross Settlement Fund by wiring the money to a Qualified Settlement Fund [] that shall be set up, held and controlled by the Settlement Administrator." (Doc. 34-4 at 11, ¶ 12.) Within 10 court days of receiving the Gross Settlement Fund, the Settlement Administrator will distribute approved attorneys' fees and costs to Defendants. (*Id*. at 11-12, ¶ 12.) In that same 10-day period, the Settlement Administrator will issue the other approved payments, including to class members. (*Id.*) Thus, Class Counsel will receive payment in the same period of time as class members, and the timing of payment does not weigh against preliminary approval of the Settlement.

The fees to which the parties have agreed fall within the range of acceptable attorneys' fees in the Ninth Circuit. *See Powers*, 229 F.3d at 1256. Importantly, however, any party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945-46 (9th Cir. 2007). Because the identified percentage of the Gross Settlement Fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily. The

Court will evaluate the reasonableness of the fee request and the exact amount of the fee award upon application by Class Counsel with final approval of the Settlement.

4.     Agreement required to be identified

The Court must consider any agreement that is required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv). Specifically, "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The parties have identified no such agreement and the Court is not aware of any such agreement. Therefore, this factor does not weigh against preliminary approval.

**D.     Treatment of Class Members**

Rule 23 requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." *Hilsley*, 2020 WL 520616 at *7 (citation omitted).

The parties agreed that "unless an individual chooses to affirmatively opt-out of the Settlement, each member of the Settlement Class will automatically receive his or her pro rata share of the Net Settlement Fund." (Doc. 34-1 at 12, citing Doc. 34-4 at 7, ¶ 8.) Plaintiff asserts that "[g]iven that this lawsuit is based entirely upon the alleged underpayment of overtime, it is reasonable to apportion the settlement funds based on the number of overtime hours worked." (*Id*. at 20.)

Because the Settlement provides for *pro rata* distribution to class members based upon the number of overtime hours worked, the agreement treats the class members equitably, and the proposed distribution plan supports preliminary approval. *See Cooks v. TNG GP*, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) (observing that the calculation of payments to class members "on a pro-rata basis based on the number of compensable workweeks each member worked … is fair and treats class members equitably"); *see also Gomez-Gasca v. Future AG Mgmt. Inc.*, 2020 WL 6149688 at *4 (N.D. Cal. Oct. 20, 2020) (noting that in the preliminary approval stage, "the Court approved the proposed plan pro rata allocation based on the number of workweeks the class member performed work during the Class Period"); *In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898 at *5 (S.D. Cal. Oct. 29,

2020) (finding a *pro rata* distribution plan was equitable and weighed in favor of approving the settlement terms).

### E.    Class Representative Service Awards

Service awards, or incentive awards, for class representatives are not to be given routinely by the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). "In the Ninth Circuit, courts have found that $ 5,000 is a presumptively reasonable service award." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019); *see also Figueroa v. Conner Logistics, Inc.*, 2021 WL 164870, at *3 (E.D. Cal. Jan. 19, 2021), *report and recommendation adopted*, 2021 WL 707725 (E.D. Cal. Feb. 23, 2021) ("A service award of $5,000.00 is presumptively reasonable, but courts have awarded higher amounts."). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … the amount of time and effort the plaintiff expended in pursuing the litigation … and reasonable fears of workplace retaliation." *Id.* at 977.

The Settlement provides that Plaintiff, as Class Representative, may apply "for a service award to be deducted from the Gross Settlement [Fund]" in an amount to be determined by the Court and not to exceed $5,000.00. (Doc. 34-1 at 11; Doc. 34-4 at 7, ¶ 7; *see also* Doc. 34-3 at 7, ¶ 31 (explaining that Plaintiff will not seek a class representative award in excess of $5,000.00).)

According to the proposed notice, the request for a Class Representative Service Award is to "compensate [Plaintiff] her for the risks, time and expense of her involvement in this Action." (Doc. 34-4 at 19.) Plaintiff understands that, as part of the Settlement, she is required to waive all claims

against Defendants, "which is broader than the limited release provided by the other members of the class." (Plaintiff Decl. ¶ 16.) In addition, Plaintiff asserts that she was concerned about how filing a class action would impact her ability to find employment. (*Id.*, ¶ 8.) She also expressed her awareness that she might be responsible for Defendants' legal costs if the case was not successful. (*Id.*, ¶ 7.) Despite these concerns, Plaintiff assumed the risks because she "felt strongly about the importance of this case and really wanted things to change in the travel nursing industry." (*Id.*, ¶ 9.)

In addition to the risks Plaintiff assumed on behalf of the Settlement Class, Plaintiff also contends she has devoted significant time to this action. (Plaintiff Decl. ¶ 12.) Some of Plaintiff's noted actions include compiling documents and records; conferring with counsel regarding Defendants' calculation methods; preparing initial disclosures; reviewing documents and discovery; and participating in ongoing settlement discussions. (*Id.*, ¶¶ 13-15.) Plaintiff has expended time, effort, and expenses in pursuing this action. Furthermore, the $5,000.00 proposed service award is within the range of presumptively reasonable amounts in the Ninth Circuit. Thus, the request for approval of a Class Representative Service Award *up to* $5,000 is approved preliminarily.

### F.   Experience and Views of Counsel

As addressed above, Class Counsel are experienced in class action employment litigation. Moreover, they have been actively involved in this action, including "undertak[ing] exhaustive discovery" since the complaint was filed in 2020. (*See* Doc. 34-3 at 4-6, ¶¶ 11-23.) The proposed notice also indicates that "[t]he class claims were settled because Class Counsel and the Plaintiff believe that the amount of the settlement is fair and reasonable in light of the strength and weaknesses of the claims and other factors." (Doc. 34-4 at 18.) The experience and opinions of counsel are entitled to significant weight, and support approval of the Settlement Agreement. *See Nat'l Rural*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because [p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.") (internal citations, quotations omitted); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties."). Class Counsel's level of experience and competence,

involvement and dedication to this action, and opinion of the settlement weigh in favor of preliminary approval. *See Nat'l Rural*, 221 F.R.D. at 528 (considering counsel's degree of competence and counsel's opinion of the proposed settlement).

### G.    Reaction of Class Members to the Proposed Settlement

Plaintiff has agreed to the terms of the Settlement Agreement. (Doc. 34-4 at 15.) However, because the class members have not yet received notice, this factor shall be revisited with final approval of the Settlement. *See Cottle*, 340 F.R.D. at 376 ("The reaction of the class members is best assessed at the final approval hearing since the court can look at how many class members submitted … objections").

### APPOINTMENT OF SETTLEMENT ADMINISTRATOR

The parties have agreed upon and propose that the Court appoint Phoenix Class Action Administration Solution to serve as the Settlement Administrator. (Doc. 34-4 at 4, ¶ 4.) Under the terms of the proposed Settlement:

> The Settlement Administrator will administer the Settlement including, but not limited to, distributing notice of the Settlement, processing opt-outs, objections, disputes, and inquiries regarding the Settlement, calculating and directing the disbursements of payments under the Settlement, issuing appropriate tax forms for disbursements under the Settlement, and calculating and processing required tax withholdings, if any, on such disbursements. The Settlement Administrator shall provide the Parties with weekly reports regarding the status of mailings, returns, and re-mailings, objections received, and disputes regarding the calculation of overtime hours. The Settlement Administrator shall not disburse funds except as provided herein, as ordered by the Court, or as agreed upon in writing by counsel for both Parties. Settlement administration expenses shall not exceed $15,000.

(*Id.*) Settlement administration fees and costs are to be deducted from the Gross Settlement Fund, payable to Phoenix. (*Id.* at 5, ¶ 7.)

Based upon the recommendation and request of the parties, Phoenix is appointed as the Settlement Administrator.

### APPROVAL OF CLASS NOTICE

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## I.   Content of the Notice

Plaintiff has submitted the proposed Notice Packet. (Doc. 34-4 at 17-22.) The Notice Packet provides information regarding the background of the action and claims asserted by Plaintiff that have resolved because of the Settlement. (*Id.* at 17-18.) Additionally, the Notice Packet explains the terms and provisions of the Settlement, including payments from the Gross Settlement Fund and how payments will be received. (*See id.* at 18-21.) The Notice Packet also explains the effect of the judgment and settlement, including the claims released. (*Id.* at 20-21.) Finally, the Notice explains the right to object to the Settlement or request exclusion, information about the final approval and fairness hearing, and will include the applicable deadlines. (*Id.* at 19-21.) Consequently, the Court finds the content of the Notice Packet is adequate.

## II.   Method and Administration of Notice Packet

The Settlement provides:

No later than fifteen (15) days after the Court enters an Order granting preliminary approval of the Settlement, Defendant shall provide to the Settlement Administrator a list containing the names, last known addresses, dates of employment, social security numbers, and Qualifying Overtime Hours for each member of the California Rule 23 Class (collectively "Employee Data"). Using the Employee Data, the Settlement Administrator shall calculate the estimated settlement payment to which each member of the California Rule 23 Class is entitled pursuant to the formula described above. Within fifteen (15) days of receipt from Defendant of the Employee Data, the Settlement Administrator shall mail the Settlement Notice, via First-Class Mail using the United States Postal Service, to the most recent address known for each member of the California Rule 23 Class. Before mailing the Settlement Notice, the Settlement Administrator shall review the National Change of Address Registry for all members of the California Rule 23 Class and/or conduct a skip trace to determine the most up-to-date addresses.

If any Settlement Notices are returned with a forwarding address, the Settlement Administrator shall re-mail the Settlement Notice to the forwarding address. In the event that a Settlement Notice is returned without a forwarding address, the Settlement Administrator shall, via skip-tracing, seek an address correction for such

1

2

individual, and, if an updated address is identified, send the Settlement Notice to the new address within seven (7) days. The Settlement Administrator may conduct any investigation it deems economically reasonable and consistent with industry practice to determine the correct address of any member of the Settlement Class.

3

4

(Doc. 34-4 at 9, ¶ 11(b).)

5

Class members who wish to exclude themselves from the Settlement will have 45 days from

6

date the Notice is mailed ("Response Deadline) to submit a signed request for exclusion form

7

("Request for Exclusion"). (Doc. 34-4 at 9, ¶ 11(c).) "To be considered valid, a Request for Exclusion

8

must: (1) include the individual's full name and address; (2) include the last four digits of the

9

individual's Social Security Number; and (3) be postmarked to the Settlement Administrator by the

10

Response Deadline, the date of which shall be stated in the Settlement Notice." (*Id.*) Class members

11

who timely return a valid Request for Exclusion will be deemed "opted-out". They will not participate

12

in or be bound by the Settlement, nor will they be permitted to object to the Settlement. (*Id.*)

13

Similarly, class members who wish to object to the Settlement have 45 days to mail a written

14

objection to the Settlement Administrator. (Doc. 34-4 at 10, ¶ 11(d).) Any objection must state "the

15

basis for the objection and include any supporting documents." (*Id.*) To be considered valid, an

16

objection must also: " (1) be in writing; (2) include the objector's full name and address; (3) include

17

the last four digits of the objector's Social Security Number; (4) state the basis for the objection and

18

include any supporting documents; and (5) be postmarked to the Settlement Administrator by the

19

Response Deadline, the date of which shall be stated in the Settlement Notice. (*Id.*)

20

The Settlement Administrator must "provide counsel for the Parties with complete copies and

21

the postmark dates for each objection, within two business days of receipt." (Doc. 34-4 at 10, ¶ 11(d).)

22

Additionally, Class Counsel must "file all objections with the Court at the time of filing a motion for

23

final approval." (*Id.*) Pursuant to the Settlement, the parties "agree that they will not solicit, encourage,

24

or advise any individuals to object to the Settlement." (*Id.*) Class members who do not timely object

25

will be deemed to have waived any objections. (*Id.*)

26

No later than seven days following the Response Deadline, the Settlement Administrator will

27

"provide counsel for the Parties with a declaration attesting to completion of the notice process set forth

28

herein, including a list of the individuals, if any, who returned a timely and valid Request for

Exclusion. The declaration shall be filed with the Court along with the papers requesting final approval of the Settlement." (Doc. 34-4 at 11, ¶ 11(f).)

### III.   Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date and location of the hearing for Final Approval of Class Settlement. In addition, the Notice must be modified to include the deadlines for requesting exclusion, any opposition to the Settlement, and disputes of the employment information for the class member. Finally, the Notice Packet must include the contact information, including telephone and fax numbers, for the Settlement Administrator.

If Plaintiff intends to issue a Spanish language translation of the Notice, she is informed that this Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

### CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class Settlement Agreement is fair, adequate, and reasonable. The factors set forth under Rule 23 and Ninth Circuit precedent weigh in favor of preliminary approval of the Settlement Agreement.

Accordingly, the Court **ORDERS**:

1. Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**, with the class defined as follows:

> All non-exempt hourly healthcare professionals employed by Defendant in California who, at any time from December 8, 2016 through September 30, 2022, worked overtime and received a per diem allowance.

2. Preliminary approval of the parties' proposed Settlement Agreement is **GRANTED**.

3. The proposed notice plan is **APPROVED**.

4. Margarita Erguera is **APPOINTED** as the Class Representative for the Settlement Class.

5. The firm of Hayes Pawlenko LLP is **APPOINTED** as Class Counsel.

6. Phoenix Class Action Administration Solutions is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement

Agreement.

7.       The Class Representative service award request for Plaintiff is **GRANTED** preliminarily up to the amount of $5,000.00, subject to a petition and review at the Final Approval and Fairness Hearing. Class members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

8.       Class Counsel's request for fees not to exceed 25% of the gross settlement amount and costs up to $10,000.00 is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing. Class members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

9.       The petition for attorneys' fees and for class representative service award **SHALL** be filed no later than **February 9, 2023**.

10.      Costs of settlement administration shall not exceed $15,000.00.

11.      The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice with the required revisions for the Court's approval within seven days of the date of service of this Order.

12.      Defendants **SHALL** provide the Settlement Administrator with the Class Data no later than **November 29, 2022**.

13.      The Settlement Administrator **SHALL** mail the approved Class Notice Packet no later than **December 13, 2022**.

14.      A Class member who wishes to be excluded from the Settlement shall postmark a Request for Exclusion within 45 days of the Notice Packet mailing.

15.      Any objections to or comments on the Settlement Agreement must be submitted to the Settlement Administrator within 45 days of the Notice Packet mailing.

16.      A Final Approval and Fairness Hearing is **SET** for **March 9, 2023** at 9:00 a.m. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and

24

requests, including the Class Representative service award request and motion for attorneys' fees.

17.   Class members may appear at the hearing on **March 9, 2023,** in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative service award. For comments or objections to be considered at the hearing, the class member must file comments with the Clerk of this Court indicating briefly the nature of the class member's comments, support, or objection.

18.   <u>The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court</u> on or before **February 9, 2023**.

19.   The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members.

20.   The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

21.   Plaintiff's Fair Labor Standards Act claim is **DISMISSED** without prejudice.

IT IS SO ORDERED.

Dated:   **November 8, 2022**

UNITED STATES DISTRICT JUDGE