**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARGARITA ERGUERA, an individual on behalf of herself and others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CMG CIT ACQUISITION, LLC, et al.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:20-cv-1744 JLT CDB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT<br>(Doc. 44)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, ADMINISTRATION EXPENSES, AND SERVICE PAYMENT<br>(Doc. 43) |

Margarita Erguera asserts CMG CIT Acquisition, LLC and Circharo Acquisition LLC violated California wage and hour laws by (1) failing to include all remuneration in the regular rate of pay when calculating overtime wages, and (2) failing to timely pay all wages owing at termination of employment. (*See generally* Doc. 1.) Plaintiff seeks final approval of a class settlement reached in this action. (Doc. 44.) In addition, Plaintiff seeks attorneys' fees and costs from the settlement fund, expenses for settlement administration, and a service payment for the class representative. (Doc. 43.) Defendants do not oppose these requests, and no class member submitted objections to the settlement terms. The Court found the matters suitable for decision without oral argument pursuant to Local Rule 230(g), and the hearing for final approval was vacated. (Doc. 46.)

Because Plaintiff meets the burden to demonstrate certification of the Settlement Class is appropriate under Rule 23 of the Federal Rules of Civil Procedure—and the terms of the settlement are

fair, reasonable, and adequate—the request for final approval of the Settlement is **GRANTED**. The request for attorneys' fees is granted in the amount of **$225,000.00**; costs are awarded in the amount of **$9,305.85**; Settlement Administration costs are granted in the amount of **$10,000.00**; and Plaintiff's service payment as the Class Representative is granted in the amount of $**5,000.00**.

## BACKGROUND

Defendants "operate a healthcare staffing company that employs hourly health care professionals for short-term travel assignments at health care providers throughout California and elsewhere." (Doc. 1 at 3-4, ¶ 11.) For each work assignment, Defendants execute an assignment contract specifying the employee's compensation and expected work hours. (*Id*. at 4, ¶ 12.) Employees receive both an hourly wage and a weekly per diem allowance, the latter of which varies depending upon the extent to which the employee satisfies her contracted hours for that week. (*Id*., ¶¶ 13-14.) An employees' weekly per diem allowance is prorated on a sliding scale to the extent the employee fails to satisfy her weekly contracted hours. (*Id*., ¶ 16.)

Plaintiff asserts that as employees of Defendants, she and others performed assignments for more than eight hours per week. (Doc. 1 at 4, ¶¶ 20, 23.) When this would occur, Plaintiff alleges that Defendants "did not include the value of the weekly per diem allowance in [their] regular rate of pay for purposes of calculating [their] overtime and double time wages." (*Id*. at 5, ¶ 21.)

On December 8, 2020, Plaintiff filed the instant class complaint. (Doc. 1.) She identifies the following causes of action: (1) failure to pay overtime wages pursuant to Cal. Labor Code §§ 510, 1194; (2) unlawful and unfair conduct in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) waiting time penalties pursuant to Cal. Labor Code §§ 201, 203; and (4) violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (*Id*. at 7-10, ¶¶ 32-52.) Plaintiff asserts the claims are brought on behalf of herself and the California class composed of "[a]ll non-exempt hourly health care professionals employed by DEFENDANTS in California who, at any time since four years before the filing of this action, worked overtime and received a per diem allowance." (*Id*. at 5, ¶ 23.) Defendants filed their answer on February 8, 2021. (Doc. 8.)

Plaintiff filed an unopposed motion for preliminary approval of the settlement, which was granted on November 8, 2022. (Docs. 34, 37.) The Court appointed Plaintiff as the Class

Representative and authorized her request for an incentive payment up to $5,000 "subject to a petition and review." (Doc. 37 at 23-24.) In addition, the Court appointed the firm of Hayes Pawlenko LLP as Class Counsel. (*Id.* at 23.) The Court preliminarily granted "Class Counsel's request for fees not to exceed 25% of the gross settlement amount and costs up to $10,000.00," noting the requests were also subject to review at the final approval stage. (*Id.* at 24.) Finally, the Court appointed Phoenix Class Action Administration Solutions as the Settlement Administrator, and authorized costs up to $15,000.00 for the administration. (*Id.* at 23-24.)

The Court approved the Class Notice that conveyed this information for Class Members on November 18, 2022. (Doc. 40 at 1.) The Class Notice informed Class Members of the class approved by the Court, claims and issues to be resolved, representation by counsel, how to be excluded from the class, deadlines for any requests for exclusion and objections, and the binding effect of a class judgment. (*See* Doc. 39-1.)

On January 18, 2023, the Settlement Administrator mailed the Class Notice to all 784 Class Members. (Doc. 44-4 at 3, Salinas Decl. ¶ 2.) Jarrod Salinas, a case manager for the Settlement Administrator, reports that "[f]or the forty-one (41) Notices returned from the Post Office without a forwarding address, Phoenix attempted to locate a current mailing address using TransUnion TLOxp, one of the most comprehensive address databases available for skip tracing." (*Id.*, ¶ 3.) Mr. Salinas reports that "[o]f the forty-one (41) Notices that were skip traced, thirty-nine (39) updated addresses were obtained and the Notice was promptly re-mailed to those Class Members via first class mail." (*Id.*)

Mr. Salinas reports only two Notice Packets were undeliverable. (Doc. 44-4 at 3, ¶ 4.) No Class Member disputed the number of overtime hours identified in their Notice Packets for purposes of calculating each settlement share. (*Id.*, ¶ 7.) Further, no requests for exclusion or objections to the agreement terms were received by either the Settlement Administrator or the Court. (*See id.*, ¶¶ 5-6.)

On February 9, 2023, Plaintiff filed a motion for attorneys' fees and costs, a service award for Plaintiff as the Class Representative, and settlement administration expenses. (Doc. 43.) On March 2, 2023, Plaintiff filed a motion for final approval of the settlement. (Doc. 44.) Defendants did not oppose either of the pending motions.

///

## SETTLEMENT TERMS

Pursuant to the proposed "Joint Stipulation and Settlement Agreement ("Settlement" or "Settlement Agreement"), the parties agree to a gross settlement amount ("Gross Settlement Fund") of $900,000.00 for a class including:

> All non-exempt hourly healthcare professionals employed by Defendant in California who, at any time from December 8, 2016 through September 30, 2022, worked overtime and received a per diem allowance.

(Doc. 34-4 at 4, Settlement ¶ 2; *id.* at 6, ¶ 6, ("Settlement Class").) In the event the number of class members exceeds 800, the Gross Settlement Fund "shall be increased pro-rata for each additional class member." (*Id.* at 6, Settlement ¶ 6.) The settlement funds are non-reversionary and Defendants shall also pay "[e]mployer-side payroll taxes" separately from the Gross Settlement Fund. (*Id.*)

## I.     Payment Terms

The parties agree the Gross Settlement Fund shall cover payments to class members, including (1) a service award to Plaintiff as the Class Representative, not to exceed $5,000; (2) payment to Class Counsel for attorneys' fees and costs, not to exceed $10,000.00; and (3) administration fees to the Settlement Administrator, not to exceed $15,000.00. (Doc. 34-4 at 6-7, Settlement ¶ 7; *id.* at 19; *see also* Doc. 34-1 at 11-12.) After these payments, the remaining balance of the Gross Settlement Fund ("Net Settlement Fund") would be distributed to class members who did not opt-out. (*Id.*)

Settlement shares will be calculated on a *pro rata* basis to class members "based on the number of overtime hours [Defendants'] pay records credit each member with having worked during the class period (hereafter 'Qualifying Overtime Hours')." (Doc. 34-4 at 7, Settlement ¶ 8.) The Settlement provides:

> The Net Settlement Fund shall first be divided by the total number of Qualifying Overtime Hours worked by the entire California Rule 23 Class to determine the monetary value of each Qualifying Overtime Hour. Each individual payment to a member of the class will then be calculated by multiplying that individual's number of Qualifying Overtime Hours by the monetary value of each Qualifying Overtime Hour. Mathematically, an individual's settlement payment will be calculated as follows: (Net Settlement Fund ÷ Qualifying Overtime Hours of entire class) x (Qualifying Overtime Hours worked by the individual) = individual settlement payment.

(*Id.*)

The appointed Settlement Administrator will distribute payment by mailing checks to all class

members. (Doc. 34-4 at 11-12, Settlement ¶ 12.) Checks must be cashed within 180 days of the

mailing. (*Id.*) If any check remains uncashed after the 180-day period, the money does not revert to

Defendants. Rather, "the amount shall be deposited with the State of California Controller's Office of

Unclaimed Funds in the name of the individual to whom the settlement check had been addressed."

(*Id.*)

## II.     Releases

The Settlement provides that Plaintiff and class members, other than those who elect not to

participate in the Settlement, shall release Defendants from claims. (Doc. 34-4 at 5-6, Settlement ¶ 5.)

Specifically, the release for all class members provides:

> **a.     Class Release:** As of the Effective Date, all members of the
> California Rule 23 Class who do not timely request exclusion from the
> Settlement, shall release CMG CIT Acquisition, LLC, its predecessor
> Circharo Acquisitions LLC, along with any parent, subsidiary, affiliate,
> predecessor or successor, agents, employees, officers, and directors
> ("Releasees") throughout the class period from any and all debts,
> liabilities, costs, demands, obligations, claims, causes of action, or
> complaints arising during the class period that were pled on behalf of the
> California Rule 23 Class in the operative Complaint, or which could have
> been pled on behalf of the California Rule 23 Class based on the same
> facts as pled in the operative Complaint. This includes claims, to the
> extent based on the same facts as pled in the operative Complaint, relating
> to the alleged failure of the Defendant to provide any of the California
> Rule 23 Class Members with compensation as required by law relating to
> wages, claims for overtime hours worked, itemized wage statement/pay
> stub violations, civil penalties, PAGA penalties, or waiting-time penalties
> as required by law or regulations, the failure to pay penalties, alleged
> violations of California Labor Code as well as the relevant Industrial
> Welfare Commission Wage Order(s), Title 8 of the California Code of
> Regulations, California Business and Professions Code Sections 17200,
> et seq., as well as claims for interest, costs, attorneys' fees, compensatory
> damages, and all claims for restitution and other equitable relief,
> injunctive relief, liquidated damages, and any other remedies owed or
> available under the law based on the facts set forth in the operative
> Complaint.

(*Id.* at 5, Settlement ¶ 5.)

The release for Plaintiff encompasses more claims than those identified for class members,

because she agreed to release any claims known and unknown against Defendants, not just those claims

constrained to the facts alleged in this action. Specifically, Plaintiff's release provides:

> As of the Effective Date, Plaintiff, in her individual capacity only, shall
> irrevocably and unconditionally release, acquit, and discharge the
> Releasees from any and all complaints, claims, liabilities, obligations,
> promises, agreements, controversies, damages, costs, losses, debts and

expenses (including attorneys' fees and costs actually incurred), of any nature whatsoever, known or unknown, to the fullest extent permitted by law, including a waiver of California Civil Code §1542. With respect to this general release, Plaintiff stipulates and agrees that she shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under state or federal law as to the generally released claims. Section 1542 provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(Doc. 34-4 at 5-6, Settlement ¶ 5.) Thus, claims released by Plaintiff—but not the Settlement Class— include any claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Employee Retirement Income Security Act.

## III.    Objections and Opt-Out Procedure

The parties agree the class members would not be required to take any action to receive their settlement shares. (Doc. 34-4 at 7, Settlement ¶ 8.) However, any class member who wishes may file objections, elect not to participate in the Settlement, or dispute the number of Qualifying Overtime Hours allocated to him or her. (*Id.* at 9-11, Settlement ¶ 11.) The proposed notice for class members explains the procedures to object to the terms, request exclusion from the Settlement, and dispute overtime calculations. (*Id.* at 19-21.)

## IV.    Service of the Class Notice Packets and Responses Received

Jarrod Salinas, a case manager for the Settlement Administrator, reports the Notice was mailed to 784 Class Members on January 18, 2023. (Doc. 44-4 at 3, Salinas Decl. ¶ 2.) He reports that no Class Member disputed the number of overtime hours identified in the Notice, which was given for purposes of calculating each settlement share. (*Id.*, ¶ 7.) Mr. Salinas also reports the Settlement Administrator did not receive any requests for exclusion or objections from Class Members. (*Id.*, ¶¶ 5-6.) Likewise, the Court did not receive any objections to the Settlement.

## APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse

the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

## I.      Certification of a Settlement Class[1]

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate … compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

Under the terms of the Settlement, the Class is defined as: "All non-exempt hourly healthcare professionals employed by Defendant in California who, at any time from December 8, 2016 through September 30, 2022, worked overtime and received a per diem allowance." (Doc. 34-4 at 4, Settlement ¶ 2.) Plaintiff contends this proposed Settlement Class satisfies the requirements of Rule 23(a) and (b), and thus requests that final approval be granted. (*See* Doc. 44-1 at 13-20.)

### A.      Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the claims

---

[1] Because the Class was only conditionally certified upon preliminary approval of the Settlement, final certification of the Settlement Class is required.

1  or defenses of the representative parties are typical of the claims or
2  defenses of the class; and (4) the representative parties will fairly and
   adequately protect the interests of the class.

3  Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality,

4  typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

5              1.      Numerosity

6         This prerequisite requires the Court to consider "specific facts of each case and imposes no

7  absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is

8  not a specific threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant*

9  *Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002)

10 (finding the requirement "satisfied solely on the basis of the number of ascertained class members");

11 *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th Cir. 1977) (a proposed class

12 with 110 members "clearly [included] a sufficient number to meet the numerosity requirements").

13        Plaintiff asserts that "the proposed class contains approximately 800 individuals." (Doc. 34-1

14 at 14.) Therefore, joinder of all identified class members as plaintiffs is impracticable, and the

15 numerosity requirement is satisfied.

16             2.      Commonality

17        Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

18 To satisfy the commonality requirement, the plaintiff must demonstrate common points of facts and

19 law. *See Wal-Mart Stores*, 564 U.S. at 350. Thus, "commonality requires that the class members'

20 claims depend upon a common contention such that determination of its truth or falsity will resolve an

21 issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the

22 capacity of classwide proceedings to generate common answers to common questions of law or fact

23 that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

24 588 (9th Cir. 2012) (internal quotation marks, citations omitted).

25        Plaintiff asserts the commonality requirement is satisfied because "the class claims hinge on a

26 single common contention that is capable of classwide resolution." (Doc. 34-1 at 15.) According to

27 Plaintiff, "each claim is based on a challenge to [Defendants'] common policy of excluding per diem

28 payments from the regular rate of pay when calculating overtime." (*Id.*) Because it appears resolution

of the issue—whether the per diem payments were unlawfully excluded from regular pay—would apply to the claims of each of the class members, the Court finds the commonality requirement is satisfied.

### 3.      Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks, citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Plaintiff asserts the typicality requirement is satisfied because "[she] and all other members of the settlement class alike, received per diem payments which were excluded from their regular rates of pay." (Doc. 34-1 at 15.) Because Plaintiff was subjected to the same exclusions as the class members, the Court finds the typicality requirement is satisfied for purposes of settlement. *See Hanon*, 976 F.2d at 508; *Kayes*, 51 F.3d at 1463.

### 4.      Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a.      Class Representative

Plaintiff understands her obligations as Class Representative and has been actively involved

throughout litigation. (Doc. 34-5 at 3-4, Plaintiff Decl. ¶¶ 10-15.) She contends she has no inconsistent or conflicting interests with other Class Members, endeavored to adequately represent them, and dedicated significant time—in excess of thirty hours—on this matter. (*Id.*, ¶¶ 11-12.) Tasks undertaken by Plaintiff include gathering various policy documents, contracts, and pay records; conferring with counsel; preparing initial disclosures; reviewing documents and written discovery; assisting counsel with identifying witnesses and understanding company policies; and engaging in monthly status updates; participating in settlement discussions; and assisted with settlement terms. (*Id.*, ¶¶ 13-15.)

Neither party identified conflicts between Plaintiff and the Settlement Class Members. (Doc. 44-1 at 14.) Based upon the information provided, Plaintiff actively endeavored to prosecute claims on behalf others similarly situated. Moreover, the interests of Plaintiff are aligned with those of the Class Members: to maximize the recovery for the alleged violations of California wage and hour laws. Thus, it appears Plaintiff has fairly and adequately represented the interests of the Settlement Class.

### b.  Class Counsel

The law firm of Hayes Pawlenko LLP has extensive experience litigating employment class actions and serving as class counsel. Matthew Hayes reports he began practicing law in 2001, and Kye Pawlenko has been practicing since 2002. (Doc. 44-3 at 2, Hayes Decl. ¶¶ 2-4.) Mr. Hayes asserts the firm has been "appointed as lead counsel in numerous other wage and hour class actions following <u>contested</u> motions for class certification in both federal and state court . . .." (*Id.*, ¶ 5 [emphasis in original].) He identified more than ten other certified class actions in which Hayes Pawlenko LLP was approved as class counsel. (*See id.*) Mr. Hayes also reports his firm engaged in exhaustive discovery, extensive investigation, full-day mediation, and thorough drafting and negotiation of the settlement terms. (*See id.* at 4-6, ¶¶ 6-23.)

Defendants did not oppose the appointment of the Class Counsel or assert the attorneys were inadequate to represent the interest of the class for purposes of the pending settlement. The described litigation experience supports a conclusion that counsel prosecuted the action vigorously on behalf of the Settlement Class. Thus, the Court finds Hayes Pawlenko LLP satisfies the adequacy requirement.

### B.  Certification of a Class under Rule 23(b)(3)

For the foregoing reasons, the prerequisites of Rule 23(a) are satisfied by the Settlement Class.

However, a class may only be certified if it is also maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiff asserts certification of the proposed Settlement Class is appropriate under Rule 23(b)(3). (*See* Doc. 44-1 at 12; Doc. 34-1 at 16-17.)

Under Rule 23(b)(3), a class is maintainable if (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These are referred to as the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-Mart Stores*, 564 U.S. at 363 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

### 1.   Predominance

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623). "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans,* 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).

Plaintiff argues the predominance requirement is satisfied because "each class claim hinges upon the common question of whether [Defendants'] uniform policy and practice of excluding per diem payments from the regular rate of pay is unlawful" and accordingly, liability—or lack thereof— to each Class Member will be "established in unison." (Doc. 34-1 at 16.) Based upon the information provided and allegations presented in the Complaint, the Court finds adjudication of the claims via a class action promotes judicial economy, because the claims are based upon company, class-wide policies and procedures.

### 2.   Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Pursuant to Rule

23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) interests of class members, (2) other pending litigation, (3) the desirability of concentrating claims in one forum, and (4) difficulties with the management of the class action. *Id.; see also James v. Uber Techs. Inc.*, 338 F.R.D. 123, 143 (C.D. Cal. 2021) (indicating the factors identified in Rule 12(b)(3) address the "superiority" analysis).

### a.   Class members' interest in individual litigation

The Court is directed to consider "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). This factor is most relevant when class members "suffered sizeable damages or [have] an emotional stake in the litigation." *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 301 (C.D. Cal. 2011). The Ninth Circuit explained that "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190.

The Settlement Administrator reports there were no requests for exclusion, notices of objection, or overtime hour calculation disputes. (Doc. 45 at 2, Salinas Supp. Decl. ¶¶ 5-7.) Thus, there is no indication any Class Members desire to control this action or proceed with individual litigation. The anticipated payments to Class Members are not particularly large, as the estimated average payment is $829.97, although the highest individual share is approximately $28,473.40. (Doc. 44-4 at 4, Salinas Decl. ¶ 8.) It is unlikely that individuals would pursue such small claims. *See Zinser*, 253 F.3d at 1190; *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385, at *4 (N.D. Cal. Apr. 21, 2011) (noting the average payment of $2,462 was "relatively small[]" and supported a finding the class action was a superior to individual cases); *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 268 (E.D. Cal. 2014) (finding factor weighed in favor of class certification where the average individual payment was $1,400). As this Court previously observed: "When the individual claims of class members are small, the class action facilitates the spreading of the litigation costs among the numerous injured parties." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 451 (E.D. Cal. 2013) (internal quotation marks, citation omitted). Thus, the factor weighs in favor of certification.

### b.   Other litigation

Next, the Court considers "the extent and nature of any litigation concerning the controversy

already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). The parties have not identified any other litigation related to the claims raised by Plaintiff or encompassed in this Settlement. Therefore, this factor weighs in favor of class certification.

### c. Concentration in one forum

Third, the Court must consider "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). There is no suggestion the Eastern District is an undesirable forum for the matter, which raises wage and hour claims under California law on behalf of employees throughout the state. *See United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 419 (E.D. Cal. 2018) (finding the factor weighed in favor of certification where the proposed class was compromised of individuals located in California and involved "California state law claims"). Moreover, as this Court previously explained, when "parties … agreed on a proposed Settlement Agreement, the desirability of concentrating the litigation in one forum is obvious." *Wright v. Linkus Enters.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (internal quotation marks, citation omitted). Therefore, this factor weighs in favor of certification.

### d. Management of the action

Finally, the Court must consider "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). The Supreme Court explained that, in general, "manageability … encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). Because the parties reached an agreement for the class claims and identified the Settlement Class, it does not appear there are any problems with managing the action. *See Espinosa v. Ahearn*, 926 F.3d 539, 556-57 (9th Cir. 2019) ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial"). Further, the Court need not speculate as to manageability if the case proceeded to trial. *See Amchem Prods.*, 521 521 U.S. at 620 ("with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems"). Consequently, this factor weighs in favor of certification.

## II.      Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a

hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Approval is required to ensure settlement is consistent with the plaintiff's fiduciary obligations to the

class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). Toward that end,

"Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in

determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d

1014, 1023 (9th Cir. 2021); *see* Fed. R. Civ. P. 23(e)(2) (effective Dec. 1, 2018). Rule 23(e)(2) now

directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately
> represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief
>> to the class, including the method of processing class-member
>> claims;
>> (iii) the terms of any proposed award of attorney's fees, including
>> timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);
>> and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023-24. The Ninth Circuit determined this

revision to Rule 23 requires courts "to go beyond [its] precedent." *Briseño*, 998 F.3d at 1026.[2]

### A.      Representation of the Class

To determine adequacy of representation under Rule 23(e)(2), the Court may consider whether

the interests of the named plaintiff are "aligned with the interests of the Class Members." *See Cottle v.

Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021). In addition, a finding that "Class Counsel are

---

[2] Previously, the Ninth Circuit identified several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further
> litigation; the risk of maintaining class action status throughout the trial; the amount offered in
> settlement; the extent of discovery completed, and the stage of the proceedings; the
> experience and views of counsel; the presence of a governmental participant; and the reaction
> of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Due to the amendment to the Rule 23, the Court focuses its analysis on the factors now enumerated in the Federal Rules of Civil Procedure. *See Briseño*, 998 F.3d at 1026; *see also Herrera v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 170195, at *21 (C.D. Cal. June 8, 2021) ("The goal of [amended Rule 23(e)] is … to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal") (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).

experienced and competent" supports a conclusion that the class is adequately represented. *Id.; see also In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Thus, the adequacy analysis under Rule 23(e)(2) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *Mandalevy v. Bofi Holding, Inc.*, 2022 WL 1556160, at *6 (S.D. Cal. May 17, 2022) (quoting 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020)).

Plaintiff contends she has "no interests which are inconsistent with or in conflict with the interests of other members of the proposed class with regard to this litigation and have endeavored to adequately represent the members of the proposed class in this litigation." (Doc. 34-5 at 3, Plaintiff Decl. ¶ 11.) In addition, Class Counsel are clearly experienced in class action litigation. (*See* Doc. 24-1 at 16; Doc. 34-3.) Because Plaintiff carried the burden to show the adequacy prerequisite was satisfied under Rule 23(a), the Court finds the requirement under Rule 23(e)(2) is also satisfied. *See Moreno*, 2020 WL 1139672 *at 5 ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

### B.   Negotiation of the Settlement

Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit also "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. The Ninth Circuit observed that "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks, citations omitted). Thus, the Court must consider whether the settlement is truly the product of arm's length bargaining—as Plaintiff asserts (Doc. 44-1 at 14-15)— or if the agreement is the product of collusion or fraud. *Millan v.*

*Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

When a class action settlement agreement is reached prior to a class being certified, district courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 94; *see also Briseño*, 998 F.3d at 1023. These "more subtle signs" include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds" and "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal quotations, citations omitted).

### 1.    Whether there is a disproportionate distribution to counsel

The Settlement provides that Class Counsel may request attorneys' fees up to $225,000.00, which is 25% of the Gross Settlement Fund. (Doc. 34-4 at 19; Doc. 34-1 at 12; Hayes Decl. ¶ 31.) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Because the fees requested are within the range awarded by the Ninth Circuit from the Gross Settlement Fund, the Court finds the Settlement Agreement does not provide a disproportionate distribution to Class Counsel. *See Millan v. Casvade Water Servs.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015) (finding no disproportionate distribution where class counsel was to receive a third of the settlement fund "although significantly above the benchmark for this Circuit," because it was "not unreasonable as an upper bound" of fees awarded in the Circuit).

### 2.    Existence of a "clear sailing" agreement

In general, a "clear sailing" provision is one in which the parties agree to the "payment of attorneys' fees separate and apart from class funds." *In re Bluetooth*, 654 F.3d at 947. However, the Ninth Circuit also recognized a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Briseno*, 998 F.3d at 1023; *In*

*re Bluetooth*, 654 F.3d at 947.

The Settlement Agreement indicates attorneys' fees and litigation costs are to be "determined solely by the Court" and that amount will be deducted from the Gross Settlement Fund. (Doc. 34-4 at 6, Settlement ¶ 7.) Plaintiffs contend "there is *no* 'clear sailing' agreement as to the amount of fees and costs to be awarded" because the amount "shall be determined *exclusively* by the Court." (Doc. 34-1 at 12 [emphasis in original].)

However, the amount of fees will always be determined exclusively by the Court under Rule 23. This is not the test for determining whether a settlement agreement contains a clear sailing provision. Moreover, although Defendants did not expressly agree not to oppose Plaintiff's request for fees, the Class Notice provided that Plaintiff's would seek attorneys' fees of up to 25% of the Gross Settlement Fund, which Defendants did not oppose. (*See* Doc. 34-4 at 19.) Thus, there appears to be a version of a "clear sailing agreement." Notwithstanding, the existence of a clear sailing provision is not necessarily fatal to approval. *See Bluetooth*, 654 F.3d at 948; *see also In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling"). Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Id.* (citing *Staton*, 327 F.3d at 954).

As discussed below, the Court finds an award from the common fund is appropriate, and the modified award is reasonable in light of the time expended and results obtained.  This factor does not mandate a finding of collusion and the factor does not weigh against final approval of the settlement. *See Swain v. Anders Group, LLC*, 2023 WL 2976368, at *10 (E.D. Cal. Apr. 17, 2023) (finding a clear sailing provision did not weigh against final approval where the fees were "reasonable based on evidence submitted by class counsel"); *see also Singh v. Roadrunner Intermodal Servs. LLC*, 2019 WL 316814 at *7-8 (E.D. Cal. Jan 24, 2019) (not finding collusion between the parties, despite a clear sailing agreement, where the fee award was analyzed and determined to be reasonable).

### 3. Whether there is a reversion to Defendant

Finally, the parties did not arrange for any unawarded fees to revert to Defendants. Instead, the parties acknowledge in the Settlement Agreement that the gross settlement amount is "non-reversionary," and fees shall be paid from the Gross Settlement Fund. (Doc. 34-4 at 6, Settlement ¶ 6.) Because any unawarded fees will return to the Gross Settlement Fund for distribution to the Settlement Class, this factor does not support a finding of collusion between the parties.

### 4. Findings on collusion

Based upon the factors set forth by the Ninth Circuit, the Court finds the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007). Thus, this factor under Rule 23 supports final approval of the Settlement.

## C. Relief provided to the Class

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). When analyzing an agreement, the Court should examine "the complete package taken as a whole," and the proposed settlement is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625, 628.

According to Plaintiff, the damage analysis projected a maximum potential recovery of $2,954.149.14. (Doc. 44-3 at 6, Hayes Decl. ¶ 24.) The proposed settlement amount is $900,000.00. (*Id.*, ¶ 27.) After the anticipated deductions from the Gross Settlement Fund, the Settlement Administrators estimates the average individual settlement payment to be approximately $829.97 per Class Member. (Doc. 44-4 at 3-4, Salinas Decl. ¶ 8.) According to Plaintiff, $900,000.00 constitutes "roughly 75% of the unpaid overtime/doubletime allegedly owing, and roughly 30% of the maximum potential exposure if waiting time penalties are included." (Doc. 44-3 at 6, Hayes Decl. ¶ 27.)

Notably, the Ninth Circuit observed: "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. This Court previously observed that a settlement

18

amount equaling approximately 30% of the estimated potential damages was reasonable. *See, e.g., Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D 443, 444 (E.D. Cal. 2013) (finding the recovery of approximately 30% was "a reasonable compromise" and supported approval of the settlement). Analyzing the factors identified in Rule 23—as discussed below—the Court finds the amount offered and relief provided to the Settlement Class supports final approval of the Settlement.

### 1.   Costs, risks, and delays

A "central concern" when evaluating a proposed class action settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome." *Feltzs v. Cox Comm's Cal., LLC*, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) (quoting Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes [modifications in original].) Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the settlement were to be rejected, the parties would have to engage in further litigation, including seeking class certification and discovery on the issue of damages.

Plaintiff reports the following:

> Prior to reaching the Settlement, Plaintiff's counsel obtained and analyzed: (1) all of [Defendants'] policies, procedures, and practices regarding paying [class members]; (2) all of [Defendants'] policies, procedures, and practices regarding the provision of per diem payments to [class members]; (3) all of [Defendants'] policies procedures, and practices regarding adjusting, prorating and/or reducing per diem payments when employees fail to work minimum weekly required hours; (4) all versions of travel assignment agreements utilized during the class period; (5) all of [Defendants'] policies, procedures, and practices regarding calculating overtime rates for employees; and (6) payroll data regarding the average hourly wage rates and the average weekly meal and incidental and lodging per diem payments made to [class members] during the class period.

(Doc. 44-1 at 14, citing Doc. 34-3 at 4, Hayes Decl. ¶ 13).

Plaintiff acknowledges there are risks "weighing against" her related to whether per diem payments may properly be excluded from the regular rate. (Doc. 44-1 at 16.) Specifically, Plaintiff asserts the waiting time penalties claim "faces additional risks rendering it doubtful that *any* waiting time penalties could actually be recovered in light of several defenses asserted by [Defendants]." (*Id.*) As the final notice provides, "Although it believes that it complied with the law, Defendant has concluded that further defense of this litigation would be protracted and expensive for all parties.

Defendant has also taken into account the risks of further litigation in reaching its decision." (Doc. 39-1 at 3.) Further, Plaintiff asserts the risks involved "make recovery of the maximum amounts unlikely and justify this compromise for purposes of settlement." (Doc. 44-1 at 15.) Finally, the Settlement provides that all payments be distributed within 10 court days after receipt of the Gross Settlement Fund. (Doc. 34-4 at 11-12, Settlement ¶ 12.)

As Plaintiff observes, the risk and expense of continued litigation related to these claims could outweigh any additional recovery. On the other hand, the Settlement provides for immediate recovery on claims presented by Plaintiff on behalf of the class. Due to the acknowledged risk of the claims of class members, costs of future litigation that may reduce the recovery to class members, and delay in payments if the settlement is not approved, this factor weighs in favor of final approval of the Settlement. *See Rodriguez*, 563 F.3d at 966 (risk, expense, complexity and duration of litigation supports settlement); *Curtis-Bauer v. Morgan Stanley & Co., Inc*., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### 2.    Proposed distribution

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method," 4 Newberg on Class Actions § 13:53 (5th ed.)). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. The proposed method for processing claims "should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id*.

According to the Settlement, the Class Members are not required to take any action, such as submitting a claim form, to receive their settlement payment. (Doc. 34-4 at 7, Settlement ¶ 8.) Rather, the Class Members need only take specific action if they wished to opt-out of the settlement, object to any of the terms of the settlement, or dispute overtime calculations. (*Id*. at 9-11; Settlement ¶ 11.) Because Class Members are not required to submit a claim form, the proposed method of distribution

will facilitate payment for legitimate claims and is not "unduly demanding" upon the Class Members. Thus, this factor weighs in favor of final approval of the settlement. *See Jackson v. Fastenal Co.*, 2021 WL 5755583 at *11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class members did not have to file a claim).

### 3.     Attorneys' fees

When evaluating the terms of a settlement under Rule 23, "courts must scrutinize 'the terms of any proposed award of attorney's fees.'" *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)). The Ninth Circuit explained, "the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Id.* (quoting *Briseño*, 998 F.3d at 1024)).

As discussed above, Class Counsel may request attorneys' fees up to $225,000.00, which is 25% of the Gross Settlement Fund.[3] (Doc. 39-1 at 4.) The requested fees fall within the range of acceptable attorneys' fees in the Ninth Circuit. *See Powers*, 229 F.3d at 1256. The Settlement provides that within 15 court days after final judicial approval of the Settlement ("Effective Date"), Defendants will "fund the Gross Settlement Fund by wiring the money to a Qualified Settlement Fund [] that shall be set up, held and controlled by the Settlement Administrator." (Settlement ¶ 12.) Within 10 court days of receiving the Gross Settlement Fund, the Settlement Administrator will distribute approved attorneys' fees and costs to Defendants. (*Id.*) In that same 10-day period, the Settlement Administrator will issue the other approved payments, including to Class Members. (*Id.*) Thus, Class Counsel will receive payment in the same period of time as Class Members. The amount of fees and timing of payment do not weigh against final approval of the Class Settlement.

### 4.     Agreement required to be identified

The Court must consider any agreement that is required to be identified under Rule 23(e)(3).

---

[3] The Court noted in its order granting preliminary approval that the proposed Notice miscalculated 25% of $900,000.00 to be $222,500.00 (Doc. 34-4 at 19), as opposed to the correct amount of $225,000.00. (Doc. 37 at 12 n. 3.) Mr. Hayes corrected this typographical error in connection with the filing of the final, revised Notice. (Doc. 39 at 2, Hayes Decl. ¶ 4.)

Fed. R. Civ. P. 23(e)(2)(C)(iv). Specifically, "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The parties have identified no such agreement and the Court is not aware of any such agreement. Thus, this factor does not weigh against final approval.

### D.        Treatment of Class Members

Rule 23 requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." *Hilsley*, 2020 WL 520616 at *7 (citation omitted).

The parties agreed that "unless an individual chooses to affirmatively opt-out of the Settlement, each member of the Settlement Class will automatically receive his or her pro rata share of the Net Settlement Fund." (Doc. 44-1 at 11 [citing Doc. 34-4 at 7, Settlement ¶ 8].) Plaintiff asserts that "[g]iven that this lawsuit is based entirely upon the alleged underpayment of overtime, it is equitable to apportion the settlement funds based on the number of overtime hours worked." (*Id*. at 18.) Because the Settlement provides *pro rata* distribution to Class Members based upon the number of overtime hours worked, the Agreement treats Class Members equitably, and the proposed distribution plan supports final approval. *See, e.g., Swain v. Anders Grp., LLC*, 2023 WL 2976368, at *6 (E.D. Cal. Apr. 17, 2023) (finding a pro rata allocation based directly on overtime hours worked was fair and reasonable); *Martinelli v. Johnson & Johnson*, 2022 WL 4123874, at *6 (E.D. Cal. Sept. 8, 2022) ("the pro rata distribution set forth in the Settlement Agreement [is] equitable"); *In re Regulus Therapeutics Sec. Litig*., 2020 WL 6381898, at *5 (S.D. Cal. Oct. 29, 2020) (finding a *pro rata* distribution plan was equitable and weighed in favor of approving the settlement terms).

### E.        Experience and views of Counsel

As addressed above, Class Counsel are experienced in class action employment litigation. Moreover, they have been actively involved in this action since the complaint was filed in 2020. (*See* Doc. 44-3 at 4-6, Hayes Decl. ¶¶ 11-23.) Class Counsel submits the Settlement "is an excellent result for the [Class] and, as such, should be finally approved as fair, reasonable and adequate." (Doc. 44-3 at

8, Hayes Decl. ¶ 36.) The experience and opinions of counsel are entitled to significant weight, and support approval of the Settlement. *See Nat'l Rural*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because [p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.") (internal citations, quotations omitted); *Barbosa v. Cargill Meat Solutions Corp*., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties."). Class Counsel's level of experience and competence, involvement and dedication to this action, and opinion of the settlement weigh in favor of preliminary approval. *See Nat'l Rural*, 221 F.R.D. at 528 (considering counsel's degree of competence and counsel's opinion of the proposed settlement).

### G.      Reaction of Class Members to the Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529; *see also Cottle*, 340 F.R.D. at 376 (observing the court may assess the reaction of class members by considering "how many class members submitted … objections" at the final approval stage).

Plaintiff has agreed to the terms of Settlement and executed the Agreement. (*See* Doc. 34-4 at 15.) After receiving the Court-approved Notice, Class Members reacted favorably to the proposed settlement terms by not requesting exclusion or submitting objections. This "absence of a negative reaction[] strongly supports settlement." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *see also Taylor v. Populous Group, LLC*, 2023 WL 139724, at *3 (S.D. Cal. Jan 9, 2023) (finding the class members' reaction to the settlement—after notice of the settlement terms and "an opportunity to express their reactions"—supported final approval where no objections to the Settlement were filed); *Manzo v. McDonalds Rests. of Cal., Inc.*, 2022 WL 4586236, at *8 (E.D. Cal. Sept. 29, 2022) ("[t]he lack of any objection weighs in favor of final approval of the settlement"). Accordingly, this factor weighs in favor of final approval.

///

### III.     Conclusion

The factors identified under Rule 23 and by the Ninth Circuit weigh in favor of final approval of the Settlement, and the terms of the Settlement are fair, reasonable, and adequate. Therefore, the request for final approval of the Settlement Agreement is **GRANTED**.

### REQUEST FOR ATTORNEYS' FEES

Class Counsel seek attorneys' fees in the amount of $225,000.00, which is 25% of the Gross Settlement Fund. (Doc. 43-1 at 3.) Class Counsel assert this amount is reasonable under the percentage-of-the-fund and lodestar methods for calculating fees. (*Id.*) Defendants do not oppose the motion for fees.

### I.     Legal Standards

"[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). Thus, a court "may not uncritically accept a fee request," but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (a court may not adopt representations regarding the reasonableness of time expended without independent review); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request when "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not "accept[] uncritically [the] representations concerning the time expended").

The Court has discretion to use either a lodestar or percentage of the common fund calculation to evaluate a fee request. *Named Plaintiffs & Settlement Class Members v. Feldman (In re Apple Inc. Device Performance Litig.)*, 50 F.4th 769, 786 (9th Cir. 2022). The Ninth Circuit observed that "either method may… have its place in determining what would be reasonable compensation." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Whether the Court applies the lodestar or percentage method, the fees awarded must comply with Rule 23 and be "fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 963 (quoting Fed.R.Civ.P. 23(e)).

///

### A.     Lodestar method

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida*, 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Next, the Court may adjust the lodestar upward or downward using a "multiplier" considering factors adopted by the Ninth Circuit:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[4]

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988) (indicating the Court should "consider[] some or all twelve relevant criteria set forth in *Kerr*" to determine whether to deviate from the lodestar).

### B.     Percentage from the common fund

As the name suggests, under this method, "the court makes a fee award on the basis of some percentage of the common fund." *Florida*, 915 F.2d at 545 n. 3. "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 786 (9th Cir. 2022) (noting the Ninth Circuit established "[t]he benchmark percentage is 25%" of the common fund).

To evaluate whether the requested percentage is reasonable, courts may consider a number of factors, including: (1) the results obtained for the class; (2) the risk undertaken by class counsel, including the complexity of the issues; (3) the length of the professional relationship between class

---

[4] The Ninth Circuit has since determined the nature of a fee and "desirability" of a case are no longer relevant factors. *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095 n.5 (9th Cir. 2011) (internal citation omitted).

counsel and the plaintiffs; and (5) the market rate, with a lodestar cross-check. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). The percentage of the common fund awarded as fees may be adjusted below or above the benchmark, but the Court's reasons for adjustment must be clear. *Graulty*, 886 F.2d at 272; *see also In re Bluetooth,* 654 F.3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure").

### C.       Fee applicant's burden

Notably, the Court must consider similar factors under both the lodestar method and awarding a percentage of the common fund. *See Kerr*, 526 F.2d at 70; *Vizcaino*, 290 F.3d at 1048-50. With either method, the fee applicant bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours in inadequate, the district court may reduce hours accordingly." *Hensley*, 461 U.S. at 433.

## II.       Evaluation of the Fees Requested

As noted above, Class Counsel contend the requested fee award is reasonable under the "percentage-of-the-fund" or common fund method. (Doc. 43-1 at 3.) Under the "common fund" doctrine, attorneys who create a common fund for a class may be awarded fees from that fund. *Hanlon*, 150 F.3d at 1029; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). An award from the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense," and application of the doctrine is appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing Co.*, 444 U.S. at 478. Because the Settlement applies a *pro rata* distribution formula to determine the amount paid to each class member, the Court agrees

application of the common fund doctrine is appropriate.

Significantly, when fees are to be paid from a common fund, as here, the relationship between the class members and counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). The Ninth Circuit observed:

> [A]t the fee-setting stage, plaintiff's counsel, otherwise a fiduciary for the class, has become a claimant against the fund created for the benefit of the class. It is obligatory, therefore, for the trial judge to act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.

*Id.* at 1302 (internal quotation marks, citation omitted). As a result, the district court must assume a fiduciary role for the class members in evaluating the reasonableness of a request for fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("when fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

### A.    Time and labor required

Class Counsel report they expended 372.6 hours on work related to this action, including 285.3 hours by Matthew Hayes and 87.3 hours by Kye Pawlenko. (Doc. 43-1 at 4; *see also* Doc. 43-2 at 7, Hayes Decl. ¶ 10.) Class Counsel note this calculation does not include time spent preparing the instant motion nor anticipated time responding to Class Member inquiries, moving for final approval time, and attending the final approval hearing. (Doc. 43-1 at 4.) Class Counsel makes no assertion that either Mr. Hayes or Mr. Pawlenko were obligated to forego other profitable work to meaningfully litigate this matter. However, based upon the time expended and information provided by Mr. Hayes, the Court finds this factor supports an award of the fees requested by Class Counsel.

### B.    Results obtained for the Class

The result achieved for the class is a major factor to be considered in making a fee award. *Hensley*, 461 U.S. at 436; *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994). The Ninth Circuit observed that "[e]xceptional results are a relevant circumstance" to an adjustment from the benchmark award. *Vizcaino*, 290 F.3d at 1048; *see also Resnick v. Frank* (*In re Online DVD-Rental Antitrust Litig.*), 779 F.3d 934, 954-55 (9th Cir. 2015) ("the extent to which class counsel achieved exceptional results for the class" is a proper factor for a court evaluating "a request for attorneys' fees that was calculated using the percentage-of-recovery method") (internal quotation marks, citation omitted).

According to the Settlement Administrator, Class Members will receive a Net Settlement Amount of $650,694.15, with an estimated average individual award of $829.97 and the highest estimated payment totaling $28,473.30. (Doc. 43-2 at 15, Salinas Decl. ¶¶ 10-11.) Class Counsel reports that the $900,000.00 Gross Settlement Fund is an "excellent result" constituting "roughly 75% of the unpaid overtime/doubletime allegedly owing, and roughly 30% of the maximum potential exposure if waiting time penalties are included." (Doc. 44-1 at 17; Doc. 44-3 at 6, 8, Hayes Decl. ¶¶ 27, 36.) While not an "exceptional" result warranting an upward departure, Class Counsel only seeks the benchmark of 25%. *See, e.g., Monterrubio*, 291 F.R.D. at 466 (finding "the circumstances of the litigation simply do not lead the Court to conclude that the result is 'exceptional'" where the recovery for the class equaled "30% of Plaintiff's calculation of Defendant's maximum liability exposure"). Accordingly, this factor supports the requested fee amount.

### C.    Risks undertaken by counsel

The risk of costly litigation and trial is an important factor in determining the fee award. *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994). The Supreme Court explained, "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

Class Counsel contend "[t]here are significant risks that make recovery of the maximum amounts unlikely and justify this compromise for purposes of settlement." (Doc. 44-3 at 6-7, Hayes Decl. ¶ 27). Class Counsel indicate a key issue in wage-and-hour disputes is whether per diem payments may be excluded from the regular rate. (*Id*., Hayes Decl. ¶ 28.) Counsel highlights another factor weighing against Plaintiff: "The derivative claim for waiting time penalties faces additional risks rendering it doubtful that *any* waiting time penalties could actually be recovered in light of several defenses asserted by [Defendants]." (*Id*., Hayes Decl. ¶ 31 [emphasis in original].) Class Counsel reports that Defendants intended to raise the following arguments:

> First, CMG argues that it is exempt from Labor Code section 203 because it qualifies as a "temporary services employer" within the meaning of Labor Code section 201.3. *Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1175 (C.D. Cal. 2008) (holding that employee of a "temporary services employer" is "not discharged from her employment" within the meaning of Labor Code section 203 when their "temporary

assignments" end, thereby precluding the recovery of waiting time penalties).

Second, CMG argues that because the alleged overtime violations occurred prior to the Ninth Circuit's decision in *Clarke*, there is a "good faith dispute" that precludes the imposition of waiting time penalties. Cal. Code Reg. tit. 8, § 13520 ("a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203"). Indeed, at least one Court has already held that the uncertainty in the law applicable to the overtime claim at issue in this case precludes, as a matter of law, an award of waiting time penalties. *Dittman v. Medical Solution, L.L.C.,* 2019 WL 4302752, *3, n.5 (E.D. Cal. Sept. 11, 2019) (holding at summary judgment stage that, although employer unlawfully excluded per diems from "regular rate," no waiting time penalties were warranted as a matter of law because "Defendant's interpretation [of applicable law] was objectively reasonable").

(*Id.*, Hayes Decl. ¶¶ 32-33.)

Class Counsel identifies legal risks to the claims made by Plaintiff—including difficulty proceeding with per diem payment claims on a class-wide basis— and the potential for exemption from liability and the legal uncertainties following the decisions in *Clarke*. Therefore, this factor supports granting the fees requested.

### D.    Complexity of issues and skill required

The complexity of issues and skills required may support a departure from the benchmark fee award. *See In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (finding no abuse of discretion in awarding attorney's fees that totaled 33% settlement fund, finding a departure from the benchmark was warranted "because of the complexity of the issues and the risks"); *see also Ross v. Bar None Enters.*, 2015 WL 1046117, at *9 (E.D. Cal. Mar. 10, 2015) ("Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award" [citation omitted]).

Class Counsel do not identify any particularly complex issues faced in the matter nor do Counsel clearly submit that their skill, diligence, efficiency, or high-quality work resulted in the favorable settlement amount. On the other hand, the experience and skill of Class Counsel undoubtedly benefited Plaintiff and Class Members, as the parties reached an agreement approximately seventeen months after the Court issued a Scheduling Order and thus opened discovery. (*See* Docs. 11, 32.) Class Counsel asserts it propounded formal discovery and received numerous documents, including policies,

procedures, and practices; travel assignment agreements; and payroll data spanning four years. (Doc. 44-3 at 4-5, Hayes Decl. ¶¶ 12-13.) Based on the data received, Class Counsel "calculated the additional overtime allegedly owing to the putative class due to the exclusion of meals and incidentals and housing per diem payments from [Defendants'] regular rates of pay." (*Id.*, Hayes Decl. ¶ 17.) The parties proceeded to engage in negotiations following a full-day mediation and ultimately reached an agreement in September 2022. (*Id.*, Hayes Decl. ¶¶ 20-23.)

The skill and experience of Class Counsel with wage and hour litigation very likely assisted the parties in evaluating the strengths and weaknesses of the action. Based upon the information provided, Class Counsel displayed skills consistent of those that would be expected of attorneys of comparable experience. Thus, this factor supports the requested fee award equal to the benchmark. *See Monterrubio*, 291 F.R.D. at 458 (declining to depart from the benchmark based upon the "skill and quality of the work in [the] particular case," though also acknowledging class counsel were "skilled litigators in the wage and hour context").

### E.    Length of the professional relationship

Class Counsel initiated this action on behalf of Plaintiff in 2020, and it appears the professional relationship has lasted approximately 2.5 years. The short duration of the professional relationship may warrant an award below the benchmark. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (finding "the 25 percent standard award" was appropriate although "the litigation lasted more than 13 years").

### F.    Lodestar cross-check and market rate

The Court may perform a lodestar cross-check to assist in the determination of whether the fees sought from a common fund are reasonable. *See Indirect Purchaser Class v. Erwin (In re Optical Disk Drive Prods. Antitrust Litig.)*, 959 F.3d 922, 933 (9th Cir. 2020) ("we have encouraged courts using the percentage-of-recovery method to perform a cross-check by applying the lodestar method to confirm that the percentage-of-recovery amount is reasonable"); *see also In re Apple*, 50 F.4th at 786 (also encouraging a lodestar crosscheck "when utilizing the percentage-of-recovery method"). The lodestar is calculated by multiplying the time "reasonably expended" by counsel by "a reasonable hourly rate." *Florida*, 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433). Moreover, as mentioned above, a

"multiplier" may be applied. *Kerr*, 526 F.2d at 70. Class Counsel report the lodestar totals $237,825 and contend this supports an award of fees in the amount requested of $225,000. (Doc. 43-1 at 5; *see also* Doc. 43-2 at 7, Hayes Decl. ¶ 11.)

### 1.    Time expended

In general, the first step in determining the lodestar is to determine whether the number of hours expended was reasonable. *Fischer*, 214 F.3d at 1119. When the lodestar is used as a cross-check for a fee award, the Court is not required to perform an "exhaustive cataloguing and review of counsel's hours." *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (citation omitted). However, the Court has the discretion to review submitted time sheets to determine whether the time expended was reasonable. *See In re Washington*, 19 F.3d at 1298 (concluding the district court acted within its discretion in reducing the lodestar for unnecessary and duplicative work).

The Court has reviewed the billing records provided by Class Counsel. The reported 372.6 hours included various tasks including: preparation of the pleadings; communications with Plaintiff, opposing counsel, and putative class member witnesses; discovery; mediation; and preparation of the motions for approval of the Settlement. (*See* Doc. 43-2 at 27-39.) The Court's review of the time sheets confirms Class Counsel did not overbill or perform unnecessary or duplicative tasks. Consequently, the Court finds the time expended was reasonable.

### 2.    Hourly rates

The Court must determine whether the hourly rates are reasonable to calculate the lodestar. *See Florida*, 915 F.2d at 545 n.3. The Supreme Court explained attorneys' fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895-96 and n.11 (1984). In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in the Eastern District of California, this District "is the appropriate forum to establish the lodestar hourly rate…" *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

The fee applicant bears a burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation." *Blum*, 465 U.S. at 895 n.11. An applicant meets this burden by producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*; *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community … are satisfactory evidence of the prevailing market rate."). The Court may apply "rates from outside the forum ... 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).

To calculate their lodestar, Class Counsel applied an hourly rate of $650 for Mr. Hayes and $600 for Mr. Pawlenko, who both began practicing in or around 2002. (*See* Doc. 43-2 at 4, Hayes Decl. ¶ 2.) Class Counsel report that these hourly rates are "comparable to the hourly rates charged by corporate class action defense attorneys with similar educational backgrounds and over 20 years of experience." (*Id.* at 6, ¶ 8.) Class Counsel cites to one Eastern District case to support its argument that the hourly rates charged are within a reasonable range. (Doc. 43-1 at 4-5 [citing *Quiroz v. City of Ceres*, 2019 WL 1005071, *7 (E.D. Cal. Mar. 1, 2019) ("This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners.")].) All other cited cases do not assist the Court. (*See* Doc. 43-1 at 5; Doc. 43-2 at 4 [citing cases from the Northern, Central, and Southern Districts of California, as well as California Superior Courts].)

The Court has performed a comprehensive survey of fees awarded in the Eastern District, and finds current hourly rates range from $200 to $750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately 30 years. *See, e.g., Cianchetta v. BMW of N. Am., LLC*, 2022 WL 2160556, at *6 (E.D. Cal. June 13, 2022) (reducing the hourly rate for attorneys in their first year of practice to $200); *Seebach v. BMW of N. Am., LLC*, 2020 WL 4923664 at *3 (E.D. Cal. Aug. 21, 2020) (awarding the hourly rates of $200 for an attorney who had been admitted to practice less than two years, and $505 for an attorney "with roughly 20 years of experience" in 2020);

*Siafarikas v. Mercedez-Benz USA, LLC*,  2022 WL 16926265, at *3 (E.D. Cal. Nov. 10, 2022) (approving the hourly rate of $250 for an attorney "who has practiced law for three years" and $500 for an attorney who had practiced law for 21 years); *Garybo v. Leonardo Bros*, 2021 WL 449350, at *5 (E.D. Cal. Sept. 30, 2021) (adopting the recommended hourly rate of $500 for attorneys who were admitted to practice for 20 years or more to calculate a lodestar); *Mostajo v. Nationwide Mut. Ins. Co.*, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (approving of "hourly rates ranging from $650 through $750" for "attorneys with over thirty years of experience" for purposes of calculating a lodestar); *Cooks*, 2021 WL 5139613, at *6 (calculating the lodestar using the rate of $695 for attorneys with 30 years' experience). With these parameters in mind, Class Counsel's requested hourly rates exceed those awarded to the most experienced wage and hour litigators in the Eastern District and the rates must be adjusted to those of the local forum.

Based upon the experience of Class Counsel—who have practiced for approximately 20 years each—the Court finds the hourly rate of $525 is appropriate for purposes of performing the lodestar crosscheck. *See Mostajo*, 2023 WL 2918657, at *11. This downward adjustment aligns the hourly rate used to calculate the lodestar for Class Counsel with the prevailing market rates and rates awarded within the Eastern District.

### 3.    Calculation and cross-check

Based upon the survey of fees awarded in the Eastern District and the Court's own knowledge, the adjusted rates are reasonable and align with prevailing local market rates. *See Cianchetta*, 2022 WL 2160556, at *6; *Garybo*, 2021 WL 449350, at *5; *see also Ingram v. Oroudjian,* 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates). With the adjusted hourly rate, the lodestar for Class Counsel totals $195,615.00:

| COUNSEL | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Matthew B. Hayes | 285.3 | $525 | $149,782.50 |
| Kye D. Pawlenko | 87.3 | $525 | $45,832.50 |
|  |  |  | **$195,615.00** |

There is a strong presumption that the lodestar is a reasonable fee. *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978. As a result, "a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal punctuation and citations omitted). Nevertheless, the Ninth Circuit observed that the lodestar is "routinely enhanced . . . to reflect the risk of non-payment in common fund cases." *In re Washington*, 19 F.3d at 1300.

The requested fees of $225,000 would result in a multiplier of approximately 1.15 after the required adjustments to the hourly rates of the local forum. This multiplier is within the range typically awarded in the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1051 n. 6 ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"). Consequently, the lodestar cross-check supports a conclusion that the fees requested are reasonable.

**III.     Amount of Fees to be Awarded**

The factors set forth above weigh in favor of granting the fees requested, totaling 25% of the Gross Settlement Fund. Moreover, the lodestar—which is a presumptively reasonable amount—and multiplier—which is within the typical range—supports the requested amount. The fees requested are fair, adequate, and reasonable as required under Rule 23. Therefore, Class Counsel's request for fees is **GRANTED** in the amount of **$225,000.00**.

<b><u>REQUESTS FOR COSTS AND EXPENSES</u></b>

**I.     Litigation Costs**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citation omitted). Generally, reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54. Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Class Counsel indicated their costs were not to exceed $10,000.00 and the amount was preliminarily approved. (Doc. 34-4 at 19; Doc. 37 at 24.) They now request $9,305.85 in costs. (Doc. 43-1 at 5.) The itemized costs for Class Counsel include fees for filing, copying, service of process, deposition reporter, and mediation. (*Id*.; *see also* Doc. 43-2 at 7, Hayes Decl. ¶ 13.) Previously, this Court observed that costs "including filing fees, mediator fees …, copy charges, computer research, and database expert fees … are routinely reimbursed" in class action cases. *Alvarado v. Nederend*, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011); *see also Ontiveros*, 303 F.R.D. at 375 (finding costs including to mediation, court fees, research, and expert fees were "reasonable litigation fees" and approving class counsel's request for costs). Because the costs requested are reasonable and the type routinely approved, the request for litigation costs is **GRANTED** in the amount of **$9,305.85**.

## II.    Settlement Administration Expenses

The parties agreed the Settlement Administrator, Phoenix, shall receive a payment from the Gross Settlement Fund for its duties, including, but not limited to:

> [D]istributing notice of the Settlement, processing opt-outs, objections, disputes, and inquiries regarding the Settlement, calculating and directing the disbursements of payments under the Settlement, issuing appropriate tax forms for disbursements under the Settlement, and calculating and processing required tax withholdings, if any, on such disbursements. The Settlement Administrator shall provide the Parties with weekly reports regarding the status of mailings, returns, and re-mailings, objections received, and disputes regarding the calculation of overtime hours. The Settlement Administrator shall not disburse funds except as provided [in the Settlement Agreement], as ordered by the Court, or as agreed upon in writing by counsel for both Parties.

(Doc. 34-4 at 4, Settlement ¶ 4.) Mr. Salinas reports that "Phoenix's costs associated with the administration of this matter are $10,000.00. This includes all costs incurred to date, as well as estimated costs involved in completing the settlement distribution." (Doc. 43-2 at 15, Salinas Decl. ¶ 12.) Plaintiff now seeks approval of a $10,000.00 payment for the Settlement Administrator. (Doc. 43-1 at 7.)

Based upon the information provided regarding the tasks performed by the Settlement Administrator— and the continuing responsibilities with the calculation of the settlement shares, issuance and mailing of those settlement payments, and any necessary tax reporting on such payments—the Court finds the requested Settlement Administration costs are reasonable. Therefore,

the request for **$10,000.00** for the Settlement Administrator is **GRANTED**.

## CLASS REPRESENTATIVE PAYMENT

A class representative may "receive a share of class recovery above and beyond [his] individual claim" with a service payment, also known as an "incentive payment." *China Agritech, Inc. v. Resh*, 138 S.Ct. 1800, 1811 n.7 (2018); *see also Staton*, 327 F.3d at 977 ("named plaintiffs … are eligible for reasonable incentive payments"). However, incentive payments for class representatives are *not* to be given routinely. The Ninth Circuit observed: "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Staton*, 327 F.3d at 975 (citations omitted).

## I.     Awarding a Service Payment

The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013). In evaluating a request for a service payment to a class representative, the Court must consider: "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation,' and any financial or reputational risks the plaintiff faced." *In re Apple Inc.*, 50 F.4th at 786 (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1057 (9th Cir. 2019)); *see also Staton* 327 F.3d at 977. Further, payments may recognize a plaintiff's "willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

The Settlement provides that Plaintiff may apply for a service award "in an amount of up to $5,000.00" from the Gross Settlement Amount. (Doc. 34-4 at 19.) The Settlement explains that in addition to whatever payment she is otherwise entitled to as a Class Member, the service payment is "to compensate [Plaintiff] for the risks, time and expense of her involvement in this Action. (*Id*.) Plaintiff now requests the Court approve a service payment of $5,000. (Doc. 43-1 at 6.)

### A.     Time expended

The Eastern District has awarded service payments for "substantial efforts taken as a class representative when the plaintiff has undertaken at least 30 to 40 hours of work." *Greer v. Dick's*

*Sporting Goods, Inc.*, 2020 WL 5535399, at *4 (E.D. Cal. Sept. 15, 2020) (internal quotation marks, citation omitted); *see also Emmons v. Quest Diagnostics Clinical Laboratories, Inc.,* 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017) (awarding payments when each plaintiff reported "approximately 30-40 hours assisting their attorneys in the prosecution of this lawsuit" [modification adopted]). Plaintiff estimates she has spent more than 30 hours in assisting with this case. (Doc. 43-2 at 10, Plaintiff Decl. ¶ 12.) This amount of time weighs in favor of issuing a service payment.

**B.     Actions taken to benefit the class**

Plaintiff asserts that after consulting with counsel, she "chose to bring this lawsuit as a class action and serve as a class representative because [she] wanted to help all the other travel nurses get paid correctly." (Doc. 43-2 at 9, Plaintiff Decl. ¶ 6.) Plaintiff reports that before the action was filed in December 2020, she gathered and provided her lawyers with "various policy documents, contracts, and pay records concerning [Defendants'] pay practices, and conferred with [her] lawyers about the way in which [Defendants] calculated per diem payments and overtime wages for travel nurses." (*Id*. at 11, Plaintiff Decl. ¶ 13.) After the case commenced, Plaintiff reports she "conferred with counsel about preparing initial disclosures, reviewed documents and written discovery produced by [Defendants] and assisted counsel with identifying potential witnesses and understanding the policies produced in discovery, and engaged in monthly telephone and/or email updates on the status of the case." (*Id*., Plaintiff Decl. ¶ 14.) Additionally, she participated in "ongoing settlement discussions, reviewed and provided input on potential terms of the settlement, asked questions about settlement provisions, and went over all aspects of the final settlement" over the course of four months. (*Id*., Plaintiff Decl. ¶ 15.)

Notably, Plaintiff likely would have taken many of these actions even if proceeding with individual claims. On the other hand, by reviewing documents and assisting with discovery, her actions undoubtedly benefitted Class Members, who will receive an average payment of $829.97. Plaintiff also notes she has waived all potential claims she may have had against Defendants, a broader release applicable to other Class Members. (Doc. 43-1 at 6; Doc. 43-2 at 11, Plaintiff Decl. ¶ 16.) Accordingly, the actions taken on behalf of the Class support a service payment to Plaintiff.

*///*

37

### C. Workplace retaliation

The Court may consider whether the named plaintiff has "reasonable fears of workplace retaliation" in evaluating a request for a service payment. *Staton*, 327 F.3d at 977. However, this Court observed previously that when a class representative was a former employee—as here—retaliation by the defendant was not possible. *See Torcia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 280 (E.D. Cal. 2014). Because Plaintiff cannot suffer workplace retaliation by Defendants, this factor does not support a service payment.

### D. Reputational risk

Plaintiff declares she was still working for Defendants when she filed the class action because she depended on the staffing agency recruiters to get job assignments and was concerned that by "challenging the business model of how [Defendants], and many other travel nursing agencies, pay per diems and calculate overtime could make it difficult for [her] to find further employment in the travel nursing industry." (Doc. 43-2 at 9-10, Plaintiff Decl. ¶ 8.) Nonetheless, she was willing to assume these risks because she "felt strongly about the importance of this case and really wanted things to change in the travel nursing industry." (*Id*. at 10, Plaintiff Decl. ¶ 9.)

Notably, if Plaintiff elected file her *individual* claims rather than a class action, her name also would have been on the complaint as the plaintiff. Regardless, any difficulty obtaining future employment due to Plaintiff's status as a named plaintiff lacks evidentiary support and is speculative. The Ninth Circuit observed: "the trial court is not bound to, and should not, accept conclusory statements about 'potential stigma' and 'potential risk,' in the absence of supporting evidence." *See Wilson v. Telsa, Inc.*, 833 Fed. App'x 59, 62 (9th Cir. 2020) (quoting *Clark v. Am. Residential Servs. LLC*, 175 Cal. App. 4th 785, 805 (2009)). Thus, the Ninth Circuit determined a court did not abuse its discretion in reducing a requested class representative payment from $10,000 to $5,000 based on the speculative "risk of reputational injury." *Id.* However, this determination was based on the lower court's finding that the reputational risk wasn't substantial enough to "deviate[] from the standard $5,000 incentive award." *Id*. (internal quotation marks omitted). Because Plaintiff requests an amount equal to what the Court approved in *Wilson*, this factor supports the requested service payment.

///

### E.      Financial risk

Plaintiff observes that she bore a financial risk because she was aware that she might be responsible for Defendants' legal costs if the case were not successful. (Doc. 43-2 at 9, Plaintiff Decl. ¶ 7.) Courts in the Ninth Circuit have repeatedly acknowledged such a financial risk supports an incentive payment to a class representative. *See, e.g., Vasquez,* 266 F.R.D. at 491 ("Class Representatives undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for any costs awarded in favor of Defendant"); *Wilson v. Metals USA, Inc.*, 2021 WL 516585, at *9 (E.D. Cal. Feb. 11, 2021) (noting the plaintiffs asserted that "by initiating this case, they assumed the risk of a judgment against them and personal liability for an award of costs to defendant in the event of an adverse outcome, and finding the identified financial risk "weighs in favor of granting an incentive award"); *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120, at *7 (N.D. Cal. Sept. 26, 2013) ("the Class Representatives undertook a financial risk that, in the event of a judgment in favor of Defendant, they may have been personally responsible for any costs awarded in favor of Defendant"). Thus, this factor supports a service payment to Plaintiff.

### F.      Willingness to act as private attorney general

The Ninth Circuit observed that incentive payments may recognize a named plaintiff's "willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Here, Plaintiff did not act as a private attorney general under PAGA. Accordingly, this factor does not support a service payment.

## II.      Reasonableness of Plaintiff's request

Considering the factors set forth above—including the actions taken by Plaintiff on behalf of the class, the time expended, benefit received, risks undertaken, and claims waived—an incentive award is appropriate. In determining the amount to be awarded, the Court may consider the actions undertaken by the class representative, the fairness of the hourly rate, and how large the incentive award is compared to the average award class members expect to receive. *See, e.g., Ontiveros v. Zamora*, 303 F.R.D 356, 366 (E.D. Cal. Oct. 8, 2014) (evaluating the hourly rate the named plaintiff would receive to determine whether the incentive award was appropriate); *Rankin v. Am. Greetings, Inc.*, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) (noting the incentive award requested was "reasonably close

to the average per class member amount to be received); *Alvarado*, 2011 WL 1883188 at *10-11 (considering the time and financial risk undertaken by the plaintiff). Notably, a service payment of $5,000 for the class representative "is presumptively reasonable" in the Ninth Circuit. *Richardson v. THD At-Home Servs.*, 2016 WL 1366952, at *13 (E.D. Cal. Apr. 6, 2016); *see also Gonzalez v. NCI Group, Inc.*, 2023 WL 373252, at *9 (E.D. Cal. Jan. 24, 2023) ("Courts routinely find rewards in the amount of $5,000 to be reasonable"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (observing that in the Northern District, "a $5,000 payment is presumptively reasonable").

### A.  Actions of the class representative

In *Rankin*, this Court approved a service payment of $5,000, where the "[p]laintiff retained counsel, assisted in the litigation, and was an active participant in the full-day mediation." 2011 WL 13239039, at *5. Similarly, the Northern District Court determined an incentive award of $5,000 was appropriate for a class representative "was the one who initially brought the matter to counsel's attention," participated in discovery and settlement negotiations, and "spent more than 40 hours on [the] case." *Chen v. Chase Bank USA, N.A.*, 2020 WL 3432644, at *12 (N.D. Cal. June 30, 2020). The actions of Plaintiff—who reports retaining counsel, assisting with discovery, and participating in settlement negotiations—are similar to those taken in *Rankin* and *Chen*. Therefore, this factor supports a conclusion that the service payment requested by Plaintiff is fair and reasonable.

### B.  Fairness of the hourly rate

Previously, courts have considered the hourly rate of compensation for a class representative. *See, e.g., Ontiveros*, 303 F.R.D. at 366; *Moss v. USF Reddaway*, 2018 WL 5099291, at *11 (C.D. Cal. Feb. 15, 2018); *Pappas v. Naked Juice Co of Glendora, Inc.*, 2014 WL 12382279, at *14-15 (C.D. Cal. Jan. 2, 2014). In doing so, courts declined to issue service awards where the hourly rate for tasks completed in the action was excessive or unreasonable. *See Ontiveros*, 303 F.R.D. at 366; *Moss*, 2018 WL 5099291, at *11; *see also Pappas, Inc.*, 2014 WL 12382279, at *14-15.

For example, this Court criticized a requested award that would have compensated the class representative "at a rate of $73.80 per hour." *Ontiveros*, 303 F.R.D. at 366. In evaluating the reasonableness of the award, the Court noted Ontiveros was paid $15 per hour while employed by the defendant. *Id.* at 366, n.3. The Court explained that "[i]ncentive awards should be sufficient to

40

compensate class representatives to make up for financial risk … for example, for time they could have spent at their jobs." *Id.* at 366 (citing *Rodriguez*, 563 F.3d at 958-59). The Court found an award of $50 per hour "fairly compensate[d] the named plaintiff for his time," and rounded the $13,500 total up to $15,000 to "incorporate[] an extra incentive to participate in litigation." *Id.*

Similarly, the Central District declined to approve service payments to the class representatives where the proposed amount resulted in "extremely high hourly rates." *Moss*, 2018 WL 5099291, at *11. The court observed the requested award of $25,000 for each of the class representatives, Moss and Watkins, was "the equivalent of a payment of approximately $210 per hour to Moss and $470 per hour to Watkins." *Moss*, 2018 WL 5099291, at *11. Therefore, the court reduced the proposed award to each class representative. *Id.*

Plaintiff reports she was paid an hourly wage as well as per diem payments for housing, meals, and incidental expenses. (Doc. 43-2 at 9, Plaintiff Decl. ¶ 3.) She did not, however, provide any information concerning her hourly rate. The requested service payment to Plaintiff—based upon an estimated 30 hours spent on the matter—would result in an hourly rate of $166.67. This hourly rate appears excessive. *See Ontiveros*, 303 F.R.D. at 366; *see also Pappas, Inc.*, 2014 WL 12382279, at *14-15 (reducing the service awards to $58 per hour for each class representative). If the Court were to adopt the $50 hourly rate approved in *Ontiveros*, the service payment for Plaintiff would be reduced to $1,500. Thus, the hourly rate does not support a service payment in the amount requested.

## C.   Comparison of the award to those of the Class Members

The Ninth Circuit indicated the Court may consider the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 947 (9th Cir. 2015); *see also Spann v. J.C. Penney Corp.,* 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016); *see also Emmons,* 2017 WL 749018 at *9 (E.D. Cal. Feb. 27, 2017) (awarding class representative payments of $8,000, 14.5 times the average award and 0.3% of the gross settlement of $2.35 million); *Patel v. Trans Union, LLC,* 2018 WL 1258194, *3, 7-8 (N.D. Cal. Mar. 11, 2018) (awarding enhancement payment of $10,000, which was 25 times the average award and 0.125 % of the gross settlement). For example, in *Rankin*, the Court found a service award of $5,000 was reasonable, observing "the sum is reasonably close to the average per class member amount to be

41

1  received." *Id.*, 2011 WL 13239039, at *2.

2      The requested award for Plaintiff is just over 6 times the average award of $829.97 for Class

3  Members, but 5 times less than the highest estimated payment of $28,473.40. (*See* Doc. 43-2 at 15,

4  Salinas Decl. ¶ 11 [identifying the expected average award and the highest settlement share of

5  $28,473.40].) In addition, the requested award is approximately 0.55% of the Gross Settlement Fund,

6  which is a substantially lower percentage than the award this Court approved in *Vasquez*, where the

7  class representatives received service payments of $5,000 out of a gross settlement fund of $300,000, or

8  approximately 1.7%. 266 F.R.D at 490-91. Therefore, this factor supports a service payment in the

9  amount requested.

10  **III.    Amount Awarded**

11      Because, on balance, the factors discussed above support an incentive award—and the actions

12  of Plaintiff clearly benefited Class Members—a service payment is appropriate. As noted above, the

13  application of a $50 hourly rate to the 30 hours reported by Plaintiff would result in a service payment

14  of $1,500. On the other hand, Plaintiff released her additional claims and all other potential claims

15  related to her employment with Defendants. (*See* Doc. 43-2 at 11, Plaintiff Decl. ¶ 16; *see also* Doc.

16  34-4 at 5, Settlement ¶ 5(b).) The Court indicated that a plaintiff sacrificing "the opportunity to bring

17  several of his own claims" supported an increase to a service payment, even where it was "unclear

18  whether those claims would have had merit." *Ontiveros*, 303 F.R.D. at 366.

19      The requested service payment of $5,000 to Plaintiff is appropriate in light of the time

20  expended, tasks undertaken, benefit to the class, and the sacrifice of her own claims. *See Ontiveros*, 303

21  F.R.D. at 366; *see also Flores v. ADT LLC*, 2018 WL 6981043 (E.D. Cal. Mar. 19, 2018) (awarding the

22  "presumptively reasonable" service payment of $5,000 to a plaintiff who "contributed between 50 and

23  55 hours in assisting in the prosecution"). The Court finds the service payment is fair, reasonable, and

24  adequate. *See Gonzalez*, 2023 WL 373252, at *9 (noting service awards of $5,000 are routinely found

25  reasonable); *see also Vasquez*, 266 F.R.D at 490-491 (finding the requested payment of $5,000 was

26  "reasonable and appropriate"). Thus, the request for a service payment to Plaintiff as class

27  representative is **GRANTED** in the amount of **$5,000.00**.

28  ///

1

## CONCLUSION AND ORDER

2   Based upon the foregoing, the Court finds the Class Settlement is fair, adequate, and reasonable.

3   The factors set forth under Rule 23 and Ninth Circuit precedent weigh in favor of final approval of the

4   Settlement Agreement. Accordingly, the Court **ORDERS**:

5   1.   Plaintiff's motion for final approval of the Settlement (Doc. 44) is **GRANTED**.

6   2.   Certification of the Settlement Class is **GRANTED**, and the Class is defined as follows:

7
8   All non-exempt hourly healthcare professionals employed by Defendant in California who, at any time from December 8, 2016 through September 30, 2022, worked overtime and received a per diem allowance.

9

10   3.   The request for a Class Representative service payment to Plaintiff (Doc. 43) in the

11   amount of **$5,000.00** is **GRANTED**.

12   4.   Class Counsel's motion for fees in the amount of 25% of the gross settlement fund—in

13   the total amount of **$225,000.00**— (Doc. 43) is **GRANTED**.

14   5.   Class Counsel's request for costs in the amount of **$9,305.85** is **GRANTED**.

15   6.   Settlement Administration expenses in the amount of **$10,000.00**, to be paid from the

16   Gross Settlement Fund, are **APPROVED**.

17   7.   The action is **DISMISSED** with prejudice, with each side to bear its own costs and

18   attorneys' fees except as otherwise provided by the Settlement and ordered by the Court.

19   8.   The Clerk of Court is **DIRECTED** to close this action.

20   9.   The Court retains jurisdiction to consider any further applications arising out of or in

21   connection with the Settlement.

22

23   IT IS SO ORDERED.

24   Dated:   **June 20, 2023**

25   UNITED STATES DISTRICT JUDGE

26

27

28

43